In the Matter of the **ESTATE OF Daniel Salas VAZQUEZ, Deceased, Leonardo Vazquez, Appellant,**

v.

**Donald HEPNER and Betty Hepner, Appellees.**

No. 96–835.

Supreme Court of Iowa.

June 18, 1997.

Michael T. Hines of McCarthy, Lammers & Hines, Davenport, for appellant.

Jeffrey J. Neppl and Jack L. Brooks of Anderson & Nelson, Rock Island, IL, for appellees.

Considered by LARSON, P.J., and CARTER, SNELL, ANDREASEN, and TERNUS, JJ.

ANDREASEN, Justice.

Daniel Vazquez died as a result of injuries sustained in a fire in the duplex where he was living. The fire started as a result of faulty wiring located in the ceiling space between the first and second floors. Vazquez's estate sued the landlords, alleging they violated the implied warranty of habitability and Iowa Code section 562A.15 (1993) by not making a reasonable inspection of the premises. The district court held that the landlords were not liable for the defects because they had no knowledge or reason to know about the wiring problems. We affirm.

## I. *Background Facts and Proceedings.*

The following facts were stipulated to the district court. In 1992, Daniel Vazquez orally leased the upstairs apartment in a duplex owned by Donald and Betty Hepner. The Hepners had purchased the duplex, located in Davenport, Iowa, in 1986, and it was approximately 100 years old.

On November 23, 1992, a fire broke out in the duplex. Daniel died as a result of injuries he received during the fire. The investigation revealed that the fire started in the ceiling space between the floor level of the second floor and the ceiling of the first floor. The downstairs apartment was vacant at the time. The fire was caused by an electrical fault that occurred as a result of faulty splicing of Romex type wiring with older knob and tube wiring that led to a porch light. The faulty splicing had been done before the Hepners purchased the building and was concealed between the first and second floors.

The Hepners had no knowledge of the existence of the wiring problem, they never performed any repair work near the origin of the fire, and they never hired an electrician to inspect the wiring in the duplex. Further, Daniel never notified the Hepners of any electrical problems in the duplex.

On November 21, 1994, Leonardo Vazquez, as administrator of Daniel's estate, filed a wrongful death petition against the Hepners, alleging common law negligence claims and a violation of the implied warranty of habitability. Before trial, both parties entered into an agreement, asking the district court to accept their stipulations of fact and decide three issues of law. The three issues were:

1. Whether the common law implied warranty of habitability or Iowa Code section 562A.15 creates liability for an electrical defect or wiring defect in a rental premises when the landlord did not know and had no reason to know of the electrical defect or wiring defect.

2. Whether Defendants breached any duty arising from Iowa Code section 562A.15 or from a warranty of habitability under the facts of this case.

3. Whether a breach of any alleged duty as above stated allows for the recovery of personal injury damages.

In the agreement, the parties stipulated that the estate's damages were $95,000. The parties also agreed the court could consider the facts and opinions contained in depositions and previously disclosed reports of the parties and the parties' answers to discovery.

By agreement, the court entered judgment for the Hepners on Vazquez's common law negligence claims. Vazquez was permitted to amend the petition to include claims based on both the implied warranty of habitability and negligent breach of duties imposed by statute and ordinance.

The case was submitted to the court by stipulated facts on January 8, 1996. On April 3, the district court filed its decision. It addressed only the first of the three issues, ruling in favor of the Hepners. The court held that the Hepners were not liable for electrical or wiring defects that they had no knowledge of or reason to know about. Without any duty, the court stated there could be no breach of that duty or damages arising from the breach. The court further stated:

> To determine the first issue of law presented to the Court by the parties in favor of the Plaintiff would require this Court to determine that landlords are strictly liable for any defect in electrical facilities of which they have no knowledge or any reason to know about. The imposition of such a legal duty is best left to statutory or legislative action, not to courts.

The district court entered judgment in favor of the Hepners. Vazquez filed timely notice of appeal. On appeal, Vazquez claims the duties of a landlord to maintain electrical wiring, based on the implied warranty of habitability and Iowa Code section 562A.15, require a landlord to make inspections on a reasonable basis.

## II. *Scope of Review.*

■ Our scope of review is for the correction of errors at law. Iowa R.App.P. 4; *Paul v. Luigi's, Inc.,* 557 N.W.2d 895, 897 (Iowa 1997). We are bound by the district court's findings of fact if they are supported by substantial evidence. Iowa R.App.P. 14(f)(1); *Paul,* 557 N.W.2d at 897. When reviewing evidence for its substantiality, we view it in the light most favorable to upholding the district court's judgment. *Paul,* 557 N.W.2d at 897.

## III. *Dismissal of Claims Based on Doctrine of Res Judicata.*

■ We first address the Hepners' argument that all of Vazquez's claims in the amended petition must be dismissed because of the doctrine of res judicata. They argue that each count in the amended petition is based on common law negligence, and the district court already entered judgment on those claims by accepting the parties' stipulations and agreement. This contention is without merit.

Even though the first three counts of Vazquez's amended petition do not cite Iowa Code section 562A.15, they clearly recite its statutory language. A petition is not required to recite the Iowa statute being relied upon. Iowa R.Civ.P. 94. Further, the judgment entered on the negligence claims does not affect Vazquez's claim involving the implied warranty of habitability. Negligence and the implied warranty of habitability are two different causes of action with distinct elements.

## IV. *Violation of Implied Warranty of Habitability.*

Vazquez claims the district court erred in finding that the Hepners did not violate the implied warranty of habitability. We disagree.

■ An implied warranty of habitability exists in all oral or written leases of a dwelling, which includes houses, condominiums, and apartments. *Mease v. Fox,* 200 N.W.2d 791, 796 (Iowa 1972). Under this warranty,

> the landlord impliedly warrants at the outset of the lease that there are no latent defects in facilities and utilities vital to the use of the premises for residential purposes and that these essential features shall remain during the entire term in such condition to maintain the habitability of the dwelling. Further, the implied warranty ... in the lease situation is a representation there neither is nor shall be during

the term a violation of applicable housing law, ordinance or regulation which shall render the premises unsafe, or unsanitary and unfit for living therein.

*Id.*

The breach must be of such substantial nature that the premises are unsafe or unsanitary, and thus unfit for habitation. *Id.* If the implied warranty of habitability is breached, the tenant is entitled to basic contract remedies, including damages, reformation, and rescission. *Id.* Damages are measured by "the difference between the fair rental value of the premises if they had been as warranted and the fair rental value of the premises as they were during occupancy by the tenant in the unsafe or unsanitary condition." *Id.* at 797. A tenant may also recover incidental and consequential damages proven. *Roeder v. Nolan,* 321 N.W.2d 1, 5 (Iowa 1982).

There can be no violation of the implied warranty of habitability without a latent defect or a material violation of a housing code. *Mease,* 200 N.W.2d at 796. A latent defect is a "hidden or concealed defect." Black's Law Dictionary 794 (5th ed.1979). Further, a landlord is only liable for injuries resulting from a hidden or latent defect if the landlord knew or should have known of the defect. *Knapp v. Simmons,* 345 N.W.2d 118, 122 (Iowa 1984); *Wright v. Peterson,* 259 Iowa 1239, 1244, 146 N.W.2d 617, 620 (1966). In all other instances, the tenant must notify the landlord of the defect or the need for repair. *See Mease,* 200 N.W.2d at 797. In other words, a landlord is not strictly liable for all defects that result in injuries to tenants.

Even if a landlord has no actual knowledge of a defect, the landlord may have a duty to discover latent defects. In describing this duty, one court stated:

The landlord's obligation is only to do what is reasonable under the circumstances. The landlord need not take extraordinary measures or make unreasonable expenditures of time and money in trying to discover hazards unless the circumstances so warrant. When there is a potential serious danger, which is foresee-

able, a landlord should anticipate the danger and conduct a reasonable inspection before passing possession to the tenant. However, if no such inspection is warranted, the landlord has no such obligation.

*Resolution Trust Corp. v. Rossmoor Corp.,* 34 Cal.App.4th 93, 40 Cal.Rptr.2d 328, 333 (1995).

Here, neither the Hepners nor Vazquez had knowledge of the wiring problem. Both parties stipulated to that fact in their agreement. Therefore, we must determine whether the Hepners should have known of the defect. In arguing they should have been aware of the problem, Vazquez claims the implied warranty of habitability requires a landlord to make electrical inspections on a reasonable basis.

We agree with the district court's conclusion that the Hepners were not obligated to make an electrical inspection because they had no reason to know of the wiring defect. Because the porch light, which was connected to the defective wire, was working properly, there were no indications of any wiring problems. Without any foreseeable potential of danger, there was no duty to inspect. The implied warranty of habitability does not explicitly require a landlord to inspect all wiring in a structure before leasing it to a tenant. It simply requires a landlord to keep the premises safe, sanitary, and fit for habitation. *See Mease,* 200 N.W.2d at 796. As the district court stated, "the habitability of a dwelling unit is not destroyed by defective wiring [that] is unknown and unknowable to both the landlord and the tenant."

A landlord is not required to take extreme measures and expend significant amounts of time and money trying to discover hazards that may not even exist. Further, in this case, Vazquez's expert testified that even if the Hepners had hired a licensed electrician to make an inspection, there is no guarantee that the electrician would have discovered the faulty splicing, thus preventing the fire. The Hepners did all that was required by the implied warranty.

## V. *Duty of Landlord Under Iowa Code Section 562A.15.*

Vazquez also claims that the Hepners, in failing to inspect the electrical wiring, violated certain provisions of Iowa Code section 562A.15. We disagree.

Iowa Code section 562A.15 provides in relevant part:

1. The landlord shall:

   a. Comply with the requirements of applicable building and housing codes materially affecting health and safety.

   b. Make all repairs and do whatever is necessary to put and keep the premises in a fit and habitable condition.

   . . . .

   d. Maintain in good and safe working order and condition all electrical ... facilities. . . .

Iowa Code § 562A.15. If the landlord fails to comply with section 562A.15, and it materially affects health and safety, the tenant may commence an action under Iowa Code section 562A.21.

The district court was correct in finding no violation of Iowa Code section 562A.15(1)(a), which requires a landlord to comply with applicable building and housing codes. There is no evidence that the Hepners violated the Davenport Uniform Housing Code. To the contrary, the premises passed inspection by the City of Davenport in 1988.

We also agree with the court that the Hepners did not violate Iowa Code section 562A.15(1)(b), which requires a landlord to make repairs and keep the premises in a fit and habitable condition, or section 562A.15(1)(d), which requires a landlord to maintain all electrical facilities in good and safe working order. As is the case with the implied warranty of habitability, the statute does not explicitly require a landlord to inspect all wiring before leasing the premises to a tenant. Inspections are not always required to satisfy Iowa Code section 562A.15. As with the common law duty of landlords under *Mease,* the key factor in determining a landlord's liability under section 562A.15 is whether the landlord knew or should have known of the defect. The statute is not intended to hold landlords strictly liable for any defect that causes injury to a tenant.

Here, it would have been unreasonable to require the Hepners to tear up their walls and ceilings to inspect the wiring. Because the Hepners did not have actual knowledge of any wiring problems, and the defect was not foreseeable, the Hepners had no obligation to hire an electrician to inspect the premises. The statute was satisfied because the premises appeared to be in good and safe working order.

## VI. *Conclusion.*

The district court did not err in concluding that neither the implied warranty of habitability nor Iowa Code section 562A.15 imposes liability for electrical defects when the landlord did not know and had no reason to know of the defect. Therefore, we affirm the decision of the district court.

**AFFIRMED.**