**Steve BENHAM and Christine Benham, Appellants,**

v.

**Ronald E. KING, Appellee.**

No. 03–1518.

Supreme Court of Iowa.

July 8, 2005.

Patrick W. O'Bryan, Des Moines, for appellants.

Stephen J. Powell and Jim D. DeKoster of Swisher & Cohrt, P.L.C., Waterloo, for appellee.

CADY, Justice.

In this appeal, we address a recurrent issue in premises liability law concerning the duty of care under the particular circumstances of a case to support a claim for negligence. Because we find the plaintiffs' proof in this case to be insufficient, we vacate the decision of the court of appeals and affirm the decision by the district court to grant a directed verdict for the defendant.

## I. Background Facts and Proceedings

Steve Benham went to the dentist's office of Ronald King, D.D.S., on October 18, 2000 to have his teeth cleaned. Benham was placed in a dental chair, and a dental assistant cleaned his teeth. The dental assistant then began to raise the chair while Benham was in a supine position. The chair suddenly collapsed. Benham fell against a sink and cabinet located near the chair. He was injured.[1]

The dental chair used by Benham was one of six chairs in the dental office. King purchased and installed the chairs in 1981. The chairs could be raised and lowered into various positions by pressing a switch. The switch operated a motor, which turned a large gear or screw held in place by a white plastic housing unit located beneath the chair. The owner's manual provided to King by the chair manufacturer did not advise owners to inspect or replace the components of the chair, and King did not have an inspection program in place. The only prior problem King experienced with any of the chairs was that some of the set screws used to hold the lift unit in place would occasionally loosen. When this oc-

curred, the lift mechanism would not operate, and the chair would not move up or down. Once King would tighten the loose screws, the lift mechanism would operate. King never had the chair serviced or inspected by anyone outside the office.

King examined the chair after the incident that resulted in the injury to Benham. The set screws were all securely in place, but the white plastic housing unit that held the gear or screw used to raise and lower the chair had split open. King had never heard of any similar failures to dental chairs and had never been warned of the possibility of any such failures.

Benham and his wife brought a personal injury lawsuit against King. They claimed in their petition that King was negligent in failing to provide a safe place for Benham to be seated during the dental treatment. The case proceeded to trial.

At the conclusion of the Benhams' case in chief, King moved for a directed verdict. He argued:

> Under the essentials for recovery in a premises liability case, the plaintiff has the burden of proving by preponderance that Dr. King knew or in the exercise of reasonable care should have known of two things, number one, a condition on the premises; number two, that involved an unreasonable risk of injury to the plaintiff.
>
> Plaintiff's case in chief is devoid of any evidence which would indicate that Dr. King knew of the condition on the premises, that being it's undisputed what caused the chair to fall [was the plastic housing].

Additionally, Benham suffered a serious adverse reaction to the chemical agents used to clean the hospital mattress, and he broke out with painful blisters over his body.

---

1. Benham injured his head and neck and required back surgery. To compound matters, Benham suffered further complications because the surgeon nicked his spinal sac with a surgical instrument during the surgery.

In resisting the motion, the Benhams asserted a jury question was generated on the issue of whether King should have known of the dangerous condition of the chair under the circumstances. They claimed the circumstances presented at trial gave rise to a duty to protect him from the danger of a collapse of the chair. These circumstances included the age of the chair, the failure to professionally service the chair, the prior problems with the set screws, and the failure to periodically inspect the chair. They also claimed the case could go to the jury under the theory of res ipsa loquitur.

The district court granted King's motion for directed verdict. It concluded there was no evidence to support a finding that King should have known of the defective condition of the white plastic housing unit that caused the chair to collapse. In particular, there was no evidence that a crack or other defect in the housing unit could have been observable prior to the incident. The district court also rejected the res ipsa loquitur doctrine as a means to get the case to the jury.

The Benhams appealed. They claimed sufficient evidence was presented to support a negligence claim and, in particular, that King owed Benham a duty to inspect the chair. We transferred the case to the court of appeals. The court of appeals reversed the district court decision and remanded the case for a new trial. It held King had a legal duty to inspect the chair for any dangerous condition, and a jury question was generated on the issue whether an inspection would have revealed the apparent defect in the plastic housing unit. In reaching this conclusion, the court of appeals relied on the evidence concerning the age of the chair, the past need for King to repair the chair, and the relative ease of inspecting the chair. We granted further review.

## II. Standard of Review

■ The court reviews a challenge to the denial of a motion for a directed verdict for correction of errors at law. The evidence is considered in the light most favorable to the nonmoving party. If there is substantial evidence in the record to support each element of a claim, the motion for directed verdict must be overruled. Additionally, if reasonable minds could reach different conclusions based upon the evidence presented, the issue is properly submitted to the jury.

*Wolbers v. Finley Hosp.*, 673 N.W.2d 728, 734 (Iowa 2003) (citations omitted).

## III. Premises Liability

■ Negligence is conduct that falls short of the standard of care established by law for the protection of others against unreasonable risks of harm. *Knake v. King*, 492 N.W.2d 416, 417 (Iowa 1992) (per curiam) (citation omitted). To establish a claim for negligence, the plaintiff must normally prove: (1) the existence of a duty owed by the defendant to conform to a standard of care, (2) the failure to conform to the standard, (3) proximate cause, and (4) damages. *Stotts v. Eveleth*, 688 N.W.2d 803, 807 (Iowa 2004) (citing *Van Essen v. McCormick Enters. Co.*, 599 N.W.2d 716, 718 (Iowa 1999)).

■■ Generally, the standard of conduct that applies to an action for negligence is the care of a reasonable person under the circumstances. *Kastler v. Iowa Methodist Hosp.*, 193 N.W.2d 98, 101 (Iowa 1971) (citing Restatement (Second) of Torts § 283 (1965)). However, additional rules have developed over the years to define the extent of the duty of a landowner or possessor of land depending on the status of the person who entered the land. Yet, we need not address the different

standards in this case because there is no dispute that Benham was an invitee. *See Van Essen,* 599 N.W.2d at 719 n. 2 ("'A business invitee is one who is invited to enter or remain on land for a purpose directly or indirectly connected with business dealings with the possessor of the land.'" (Citation, internal· quotation marks, and brackets omitted.)). Thus, King had a duty to use reasonable care to maintain his office in a reasonably safe condition to protect Benham against foreseeable risks of harm. *Frantz v. Knights of Columbus,* 205 N.W.2d 705, 708–09 (Iowa 1973). This duty of owners and possessors of land has been more fully described in section 343 of the Restatement (Second) of Torts, which we have adopted. Section 343 provides:

> A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he
>
> (a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and
>
> (b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and
>
> (c) fails to exercise reasonable care to protect them against the danger.

In other words, under our law, possessors and owners of land have a duty to exercise reasonable care to determine the actual condition of the premises, and once the premises are discovered to be dangerous or potentially dangerous, possessors and owners of land must either make the premises reasonably safe or warn of the condition and risk. Restatement (Second) of Torts § 343 cmt. *e,* at 217.[2] This law actually identifies two corresponding duties. The first is to use reasonable care to discover the condition of the premises, and the second is to use reasonable care to make the premises safe or protect others from the harm that was discovered or should have been discovered in the exercise of the first duty. *See Richardson v. Commodore, Inc.,* 599 N.W.2d 693, 697 (Iowa 1999); Restatement (Second) of Torts § 343 cmt. *b,* at 216 ("To the invitee the possessor owes ... the additional duty ... to ascertain the condition of the land...."). Yet, liability is not imposed unless the possessor "knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm." Restatement (Second) of Torts § 343(a). Liability is not imposed in the absence of such actual or constructive knowledge of a dangerous condition because this knowledge is essential to establish a breach of the duty. *See Salima v. Scherwood S., Inc.,* 38 F.3d 929, 932 (7th Cir.1994) (breach of duty of care by landowners centers on an objective proof of owners' knowledge). We have repeatedly said that a possessor is not the insurer of safety. *E.g., Sheets v. Ritt, Ritt & Ritt, Inc.,* 581 N.W.2d 602, 606 (Iowa 1998) (plurality opinion); *Meader v. Paetz Grocery Co.,* 259 Iowa 1101, 1106, 147 N.W.2d 211, 215 (1966); *Christianson v. Kramer,* 255 Iowa 239, 243, 122 N.W.2d 283, 286 (1963).

**2.** The Restatement further provides that if the dangerous condition is known or obvious to the invitee, the landowner has no duty to protect the invitee from the danger unless harm is still foreseeable despite such knowledge or obviousness. Restatement (Second) of Torts § 343A(1); *see also* Restatement (Second) of Torts § 343 cmt. *b* ("[T]he possessor is under no duty to protect the licensee against dangers of which the licensee knows or has reason to know. On the other hand, ... there are some situations in which there is a duty to protect an invitee against even known dangers, where the possessor should anticipate harm to the invitee notwithstanding such knowledge.").

Once a duty is imposed, the existence of a breach of the duty turns on an objective evaluation of the conduct of the landowner in relationship to the standard of care. Thus, the pivotal issue in this case ultimately turns to whether the evidence at trial was sufficient to support imputing knowledge of the dangerous condition of the chair to King. There was no claim King knew of the dangerous condition, or that knowledge could be imputed because King created the condition. *See Richardson,* 599 N.W.2d at 697 ("Knowledge of a dangerous condition is imputed to a possessor of land who has created the condition that causes the plaintiff's injury." (Citations omitted.)).

The conduct necessary to satisfy the duty of reasonable care to inspect depends on the circumstances. *Id.* Normally, it is a fact question to be decided by the jury. *Johnson v. Svoboda,* 260 N.W.2d 530, 535 (Iowa 1977). Under certain circumstances, the duty to exercise reasonable care requires the possessor of land to conduct an inspection, but the possessor is not normally required to maintain a constant patrol for danger. *Vazquez v. Hepner,* 564 N.W.2d 426, 430 (Iowa 1997) (landlord not required to take extreme measures to discover hazards); *see also Culli v. Marathon Petroleum Co.,* 862 F.2d 119, 124 (7th Cir.1988) (no requirement for store owner to maintain constant patrol). Thus, while the law recognizes a duty to exercise reasonable care to inspect, this does not mean there is a duty to inspect

for every possible defect. If there is a dangerous condition on the land that is not foreseeable in the exercise of reasonable care, then it cannot be said that a possessor of land breached a duty to the invitee to discover and repair or otherwise take measures to protect the invitee against the harm. This situation was illustrated in *Vazquez.*

In *Vazquez,* a tenant died in a house fire caused by a faulty splice in the electrical wiring running between the first and second floors. *Vazquez,* 564 N.W.2d at 428. We held that the landlord had no duty under the particular circumstances to inspect for the wiring defect because there was no reasonably foreseeable danger to activate the specific inspection. *Id.* at 430. The landlord had no reason to believe there was a problem with the wiring, and an inspection would have been physically and financially impractical. *Id.* Moreover, an inspection would have unlikely revealed the defective splice. *Id.* Thus, while the landlord had a general duty to inspect, there was no duty to inspect for the specific condition that caused the harm. *Id.*[3]

On the other hand, in *Richardson,* a bar patron was injured when a piece of ceiling plaster separated from the wood lath located above a suspended ceiling and fell on him. *Richardson,* 599 N.W.2d at 695. We reversed a district court decision to grant summary judgment for the landowner after finding the evidence in the case would support liability based on a duty by the

**3.** We recognize that in *Vazquez* we relied upon the duty element of the tort of negligence in concluding that the landowner was not liable for the injury. Although we stated the landowner had no duty to inspect the wiring, the real basis for finding no liability was that the landowner did not breach the duty of reasonable care owed to Vasquez. Within the context of the circumstances presented in *Vazquez,* the landowners' duty of reasonable care did not include an obligation

to do what Vasquez claimed should have been done—inspect the wiring. Thus, within the setting of each case, the failure to establish a breach of the duty of care can be tantamount to the conclusion that the defendant had no duty to do what the plaintiff alleged was necessary in the case. *See generally* Dan B. Dobbs, *The Law of Torts* § 226 (2000); W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 53 (5th ed.1984).

landlord to inspect for the defective condition that caused the harm. *Id.* at 698. We found the danger was foreseeable because the ceiling was over eighty years old, and an inspection would have been easy to perform. *Id.* Additionally, an inspection would have likely revealed the defect and indicated the need to repair because the plaster would· have first sagged for a period of time before falling. *Id.*

Thus, *Richardson* illustrates one method to establish constructive knowledge. It can be established when the dangerous condition exists long enough so that it would have been discovered by the exercise of reasonable care. Yet, the length of time a dangerous condition is on the premises does not always lead to the imposition of a duty to discover the condition. As illustrated by *Vazquez,* a condition must still be discoverable in the exercise of reasonable care.

In this case, our review of the record in a light most favorable to Benham fails to reveal any evidence to indicate King should have known he was exposing Benham to an unreasonable risk of harm. Without such evidence, Benham cannot establish that King breached his duty of reasonable care. Contrary to the circumstances in *Richardson,* the age of the instrumentality of harm in this case does not help support a finding that reasonable care included an inspection of the housing unit of the chairs. Additionally, constructive knowledge does not arise from the past problem with the set screws. This problem only made the chair inoperable and did not reasonably alert King of the need to inspect the housing unit. Unlike the sagging ceiling existing in *Richardson,* there was nothing about the loose set screws, or any other aspect of the dental chair, to reasonably alert King to a potential for harm posed by the chair to those persons on his property. Moreover, there was no evidence explaining the feasibility of inspecting the housing unit and no evidence that a reasonable inspection would have revealed a potential danger in the housing unit prior to the incident.

This conclusion is in line with the results reached in similar factual circumstances presented in *Gremmels v. Tandy Corp.,* 120 F.3d 103 (8th Cir.1997). In *Gremmels,* a shopper at an electronics store was injured during a computer demonstration when a chair he occupied collapsed. *Gremmels,* 120 F.3d at 104. Although the backrest on the chair and one of the casters on the legs of the chair had fallen off or become loose on prior occasions, and needed to be repaired, these prior problems did not cause the collapse. *Id.* Instead, the condition that caused the collapse was a defect in a weld junction at the base of the chair. *Id.* Moreover, it was undisputed that the store did not know, nor could it have reasonably known, of the defect. *Id.* Under the specific circumstances, the court held that the store did not, as a matter of law, owe a duty to the shoppers to protect them from the defective weld. *Id.* at 106.

Although King had a duty in this case to use reasonable care to discover the condition of the chair, there was no evidence he could have discovered the particular defect that caused the harm to Benham through the exercise of reasonable care. The important inquiry is not whether King should have been aware of some general potential for harm, but whether he should have been aware of the dangerous condition that resulted in the harm. *See Gray v. Schlegel,* 265 N.W.2d 156, 158–59 (Iowa 1978) (noting that the risk must be discoverable). Under the particular facts of this case, King cannot be liable.

## IV. Conclusion

We find King had no actual or constructive knowledge of the condition that caused

harm to Benham under the circumstances of the case. Therefore, King did not breach his duty to Benham. The district court properly directed a verdict in favor of King.

**DECISION OF COURT OF APPEALS VACATED; JUDGMENT OF DISTRICT COURT AFFIRMED.**

All justices concur except WIGGINS, J., LAVORATO, C.J., and STREIT, J., who concur specially.

WIGGINS, Justice (concurring specially).

I concur in the result. I feel compelled, however, to write this special concurrence to discuss my concerns with the rules of liability under the invitee-licensee dichotomy as applied to the facts of this case.

On two occasions, our court in equally divided opinions failed to abandon the rule that the duty owed by a possessor of land is dependent on the person's status on the land in favor of the rule that the possessor of land must exercise reasonable care under all the circumstances existing at the time and place of the injury for the protection of invitees and licensees. *Anderson v. State,* 692 N.W.2d 360, 367–68 (Iowa 2005); *Sheets v. Ritt, Ritt, & Ritt, Inc.,* 581 N.W.2d 602, 605–07 (Iowa 1998); *see also Alexander v. Med. Assocs. Clinic,* 646 N.W.2d 74, 80–87 (Iowa 2002) (Lavorato, C.J., concurring specially) (Streit, J., concurring specially) (advocating the abolition of the invitee-licensee dichotomy in favor of a reasonable care standard). Abolishing the invitee-licensee dichotomy is consistent with the approach of a substantial number of jurisdictions that have abrogated the common-law distinctions based on a person's status on the land in a premises liability case.[4] The analysis used by the

---

**4.** In total, twenty-six courts have abrogated the common-law distinctions between invitees and licensees. Thirteen of these jurisdictions have abandoned the common-law distinctions between invitees, licensees, and trespassers. *See Kermarec v. Compagnie Generale Transatlantique,* 358 U.S. 625, 631–32, 79 S.Ct. 406, 410, 3 L.Ed.2d 550, 555 (1959) (abolishing the distinction as it applied to admiralty law); *Smith v. Arbaugh's Rest., Inc.,* 469 F.2d 97, 107 (D.C.Cir.1972); *Webb v. City & Borough of Sitka,* 561 P.2d 731, 734 (Alaska 1977), *abrogated in part by statute as stated in Univ. of Alaska v. Shanti,* 835 P.2d 1225, 1228 n. 5 (Alaska 1992); *Rowland v. Christian,* 69 Cal.2d 108, 70 Cal.Rptr. 97, 443 P.2d 561, 568 (1968); *Mile High Fence Co. v. Radovich,* 175 Colo. 537, 489 P.2d 308, 314–15 (1971); *Pickard v. City & County of Honolulu,* 51 Haw. 134, 452 P.2d 445, 446 (1969); *Cope v. Doe,* 102 Ill.2d 278, 80 Ill.Dec. 40, 464 N.E.2d 1023, 1028 (1984) (abolishing only with respect to child entrants); *Cates v. Beauregard Elec. Coop., Inc.,* 328 So.2d 367, 370–71 (La. 1976); *Limberhand v. Big Ditch Co.,* 218 Mont. 132, 706 P.2d 491, 496 (1985); *Moody v. Manny's Auto Repair,* 110 Nev. 320, 871 P.2d 935, 942 (1994); *Ouellette v. Blanchard,* 116 N.H. 552, 364 A.2d 631, 634 (1976); *Basso v. Miller,* 40 N.Y.2d 233, 386 N.Y.S.2d 564, 352 N.E.2d 868, 871–73 (1976); *Mariorenzi v. Joseph DiPonte, Inc.,* 114 R.I. 294, 333 A.2d 127, 133 (1975). *But see* Colo.Rev.Stat. § 13–21–115(3) (1996) (restoring the distinctions); *Tantimonico v. Allendale Mut. Ins. Co.,* 637 A.2d 1056, 1057 (R.I.1994) (restoring status category of trespasser).

Thirteen jurisdictions have limited the abrogation to the common-law distinctions between invitees and licensees. *See Wood v. Camp,* 284 So.2d 691, 695 (Fla.1973); *Jones v. Hansen,* 254 Kan. 499, 867 P.2d 303, 310 (1994); *Poulin v. Colby Coll.,* 402 A.2d 846, 851 (Me.1979); *Mounsey v. Ellard,* 363 Mass. 693, 297 N.E.2d 43, 51–52, n. 7 (1973); *Peterson v. Balach,* 294 Minn. 161, 199 N.W.2d 639, 642 (1972); *Heins v. Webster County,* 250 Neb. 750, 552 N.W.2d 51, 57 (1996); *Ford v. Bd. of County Comm'rs,* 118 N.M. 134, 879 P.2d 766, 770 (1994); *Nelson v. Freeland,* 349 N.C. 615, 507 S.E.2d 882, 892 (1998); *O'Leary v. Coenen,* 251 N.W.2d 746, 751 (N.D. 1977); *Hudson v. Gaitan,* 675 S.W.2d 699, 703 (Tenn.1984), *overruled in part on other grounds by McIntyre v. Balentine,* 833 S.W.2d 52, 57 (Tenn.1992); *Mallet v. Pickens,* 206 W.Va. 145, 522 S.E.2d 436, 446 (1999); *Antoniewicz v. Reszcynski,* 70 Wis.2d 836, 236 N.W.2d 1, 11 (1975); *Clarke v. Beckwith,* 858 P.2d 293, 296 (Wyo.1993).

majority illustrates the contradictory rules of liability we have established under the invitee-licensee dichotomy.

When applying the rules applicable to business invitees under the common-law dichotomy, we have stated, "[k]nowledge of a dangerous condition is imputed to a possessor of land who has created the condition that causes the plaintiff's injury." *Richardson v. Commodore, Inc.,* 599 N.W.2d 693, 697 (Iowa 1999). It is undeniable that King placed the chair on the premises, and a chair with a defective housing creates a dangerous condition. Applying the rule articulated in *Richardson,* a jury could impute knowledge of the defective housing unit to King and find he breached his duty to make the premises safe, even if an inspection would not have revealed the defective housing. *See* Restatement (Second) of Torts § 343 cmt. *f,* at 27–18 (1965) (stating "[a] possessor who holds his land open to others must possess and exercise a knowledge of the dangerous qualities of the place itself and the appliances provided therein, which is not required of his patrons"). In the present case, an application of the imputed-knowledge rule leads to an absurd result, making King an insurer of his premises when Benham did not introduce any evidence showing King could have discovered a defect in the housing.

Too often we are required to choose the common-law rule or exception we will apply under the dichotomy to a specific case to accomplish justice between the parties. *See, e.g., Wieseler v. Sisters of Mercy Health Corp.,* 540 N.W.2d 445, 452 (Iowa 1995) (allowing the jury to conclude that even though the plaintiff knew the parking lot driveway was frosty, he may not have realized how slippery it was when going downhill with his arms full of hospital-stay related items); *Konicek v. Loomis Bros., Inc.,* 457 N.W.2d 614, 619 (Iowa 1990) (allowing the jury to ignore a known dangerous condition by recognizing the modern pace of a worker and the weather would distract the worker and cause him to momentarily forget the danger or not see the dangerous condition); *Schuller v. Hy–Vee Food Stores, Inc.,* 328 N.W.2d 328, 332 (Iowa 1982) (allowing a jury to ignore an open and obvious condition by recognizing modern marketing techniques cause shoppers to look at merchandise on the shelves).

A more logical approach to a premises liability case would be to abandon the antiquated common-law dichotomy with its contradictory and confusing rules and adopt the modern rule requiring a possessor of land to exercise reasonable care under all the circumstances existing at the time and place of the injury for the protection of invitees and licensees.[5] The Restatement (Third) of Torts: Liability for Physical Harm (Proposed Final Draft No.

---

Justices or judges in at least six states that have retained the distinctions have published dissenting or concurring opinions arguing for change. *Shaw v. Petersen,* 169 Ariz. 559, 821 P.2d 220, 224–28 (Ct.App.1991) (Fidel, J., concurring specially); *Alexander,* 646 N.W.2d at 80–87 (Lavorato, C.J., concurring specially) (Streit, J., concurring specially); *Sheets,* 581 N.W.2d at 603–07 (plurality opinion); *Kirschner v. Louisville Gas & Elec. Co.,* 743 S.W.2d 840, 845–49 (Ky.1988) (Liebson, J., dissenting); *Little ex rel. Little v. Bell,* 719 So.2d 757, 764–68 (Miss.1998) (McRae, J.,

dissenting); *Vega ex rel. Muniz v. Piedilato,* 154 N.J. 496, 713 A.2d 442, 449–60 (1998) (Handler, J., concurring); *Musch v. H–D Elec. Coop.,* 460 N.W.2d 149, 156–57 (S.D. 1990) (Miller, J., concurring).

The Restatement (Third) of Torts: Liability for Physical Harm (Proposed Final Draft No. 1, April 6, 2005) appears to abrogate the common-law distinctions between invitees and licensees. *Id.* §§ 40(a), 40(b)(3).

**5.** The adoption of this new standard would retain our present rules as to trespassers.

1, April 6, 2005) discusses the reasonable care standard. It states:

> Primary factors to consider in ascertaining whether the person's conduct lacks reasonable care are the foreseeable likelihood that the person's conduct will result in harm, the foreseeable severity of any harm that may ensue, and the burden of precautions to eliminate or reduce the risk of harm.

*Id.* § 3. The record is devoid of any evidence showing King knew or could have known by making reasonable efforts of the dangers posed by the chair. A jury cannot find King negligent if Benham fails to establish King's knowledge of some foreseeable risk. *See Gremmels v. Tandy Corp.,* 120 F.3d 103, 105 (8th Cir.1997) (holding a business owner could not be found liable for negligence unless the evidence established the owner knew or could have known by making reasonable efforts of the danger posed by the chair). Therefore, under the circumstances present at the time of the injury, the record does not support that King failed to exercise reasonable care. It is for this reason I concur in the result.

With the complex nature of our modern society, it is becoming more difficult to apply the contradictory and sometimes confusing rules developed under the common-law dichotomy analysis. Protecting a person's life or limb should not depend on the person's purpose for being on the land. *Alexander,* 646 N.W.2d at 84 (Lavorato, C.J., concurring specially). This case is a perfect example as to why we should abandon the common-law dichotomy analysis in favor of a reasonable care standard.

LAVORATO, C.J., and STREIT, J., join this special concurrence.