**Stacey STRUVE, Plaintiff–Appellant**

v.

**Catherine N. PAYVANDI, d/b/a Woodland Management, Defendant–Appellee.**

**No. 06–1067.**

Court of Appeals of Iowa.

July 25, 2007.

Jeffrey R. Tronvold of Eells & Tronvold Law Offices, P.L.C., Cedar Rapids, for appellant.

Kimberly K. Hardeman, J. Michael Weston, and Brenda K. Wallrichs of Moyer & Bergman, P.L.C., Cedar Rapids, for appellee.

Heard by HUITINK, P.J., and ZIMMER and VAITHESWARAN, JJ. BAKER, J., takes no part.

HUITINK, P.J.

## I. Background Facts and Proceedings

Stacey Struve executed a residential lease with Woodland Management on Oc-

tober 17, 2002, for a second floor apartment in a two-story, four-plex building. The lease stated the landlord would maintain all heating appliances in good and safe working order. Struve spent her first night in the apartment on October 19, 2002. The next morning, she awoke with a headache. Her foster mother came to her apartment and smelled gas. She told Struve to call MidAmerican Energy.

A serviceman with MidAmerican Energy detected a level of 1000 parts per million of carbon monoxide in the apartment. This was the highest level his machine was capable of detecting. The serviceman also detected carbon monoxide in the other three apartments.

Struve was taken to the hospital by ambulance. She was diagnosed with carbon monoxide poisoning when tests revealed the level of carbon monoxide in her blood was 21.6%.[1]

A service technician inspected the furnaces in the four-plex the day after the incident. The technician found that the heat exchangers for the furnaces on the first floor were cracked. He also found no evidence the furnaces were emitting carbon monoxide at that time.

Within a few weeks of the incident, Struve began to notice problems with her concentration, memory, and focus. She dropped out of Kirkwood Community College; however, she resumed classes the following semester. Struve claims her concentration and memory problems are the reason she quit one job and experienced performance and productivity problems at a second job. She also testified that she walked into the wrong house at Thanksgiving, a few weeks after the carbon monoxide poisoning. Brain imaging studies were done, and the results indicated she had suffered brain damage. Specifically, she suffered damage to the hippocampus and basal ganglia.

Catherine Payvandi owns Woodland Management. In 1999 Payvandi hired Gary Brown to assist her with the daily management and maintenance of her rental units. Brown was responsible for small, routine repairs and maintenance, such as fixing faucets, repairing garbage disposals, repairing light switches, and installing and changing door locks.

Brown was not licensed to repair heating equipment, and his experience with furnaces was limited to work he had performed on his own furnace. Nevertheless, Brown performed limited furnace maintenance for Payvandi. This maintenance consisted of changing furnace filters and conducting a limited visual inspection of the furnace every three months. During the inspections, Brown would check the pilot lights and look at and around the burners, thermal couplers, and gas valves to make sure these items were visible and there was no soot present. If Brown noticed a problem during these inspections or a tenant reported a problem to him he called a heating and cooling company to perform any required maintenance or repairs.

Struve filed the present lawsuit against Payvandi on October 15, 2004. At trial, Struve presented theories on common law negligence, negligence per se under Iowa Code section 562A.15(1)(d) (2005), and a violation of the implied warranty of habitability. The trial court concluded section 562A.15(1)(d) was a general standard and did not give the jury enough information to determine whether Payvandi was negligent per se. The trial court also rejected her proposed instructions on the implied war-

---

1. The symptoms of carbon monoxide poisoning include headaches, weakness, nausea, vomiting, confusion, inability to think clearly, fatigue, and a feeling of grogginess.

ranty of habitability, stating its own instructions embodied the essential elements of this claim. The verdict form given to the jury only asked whether Payvandi was negligent and if so, whether the negligence was the proximate cause of any damage to Struve. The jury returned a verdict finding Payvandi was not negligent.

On appeal, Struve argues: (1) the trial court erred in failing to separately and adequately instruct the jury regarding an implied warranty of habitability; (2) where Iowa Code section 562A.15(1)(d) creates an affirmative duty to maintain, and the landlord does not maintain, the landlord is negligent per se; and (3) the trial court erred in disallowing portions of Valerie Walton's testimony.

## II. Merits

### A. Implied Warranty of Habitability

■ At trial, Struve argued she was entitled to recover under the alternative theory of implied warranty of habitability and entitled to jury instructions on this claim. The court rejected her proposed instructions and issued its own instructions that "embodied" the essential elements of the implied warranty of habitability. On appeal, Struve claims the court erred in not separately instructing the jury on her claim and that the instructions given did not embody the essential elements of this claim.

■ Trial court determinations regarding jury instructions are reviewed on appeal for errors of law. *State v. Kellogg,* 542 N.W.2d 514, 516 (Iowa 1996). As long as a requested instruction correctly states the law, has application to the case, and is not stated elsewhere in the instructions, the court must give the requested instruction. *Id.* However, a trial court does not err in refusing to submit a proposed instruction when its concepts are embodied in other instructions submitted to the jury. *State v. Atwood,* 602 N.W.2d 775, 784 (Iowa 1999). Also, error in giving or refusing jury instructions does not merit reversal unless it results in prejudice to the defendant. *Kellogg,* 542 N.W.2d at 516.

The implied warranty of habitability was established in *Mease v. Fox,* 200 N.W.2d 791, 796 (Iowa 1972), when the Iowa Supreme Court recognized the obligation of a landlord to provide his tenant with premises suitable for habitation. Under this doctrine, the landlord "impliedly warrants at the outset of the lease that there are *no latent defects* in facilities and utilities vital to the use of the premises for residential purposes." *Id.* (emphasis added). However, the presence of a defect and a resulting injury does not automatically lead to liability for the landlord. *Vazquez v. Hepner,* 564 N.W.2d 426, 430 (Iowa 1997). Instead, a landlord "is only liable for injuries resulting from a hidden or latent defect if the landlord knew or should have known of the defect." *Id.* Implicit in this standard is the rule that a landlord must, on some occasions, make reasonable inspections to search for latent defects. In *Vazquez,* the court cited the following language from a California decision describing when the duty to make a reasonable inspection arises:

The landlord's obligation is only to do what is reasonable under the circumstances. The landlord need not take extraordinary measures or make unreasonable expenditures of time and money in trying to discover hazards unless the circumstances so warrant. *When there is a potential serious danger, which is foreseeable, a landlord should anticipate the danger and conduct a reasonable inspection before passing possession to the tenant.* However, if no such inspection is warranted, the landlord has no such obligation.

*Id.* (quoting *Resolution Trust Corp. v. Rossmoor Corp.,* 34 Cal.App.4th 93, 103, 40 Cal.Rptr.2d 328 (1995) (emphasis added)).

Under this standard, the landlord has a duty to conduct a reasonable inspection before passing possession to a tenant when there is a potential serious danger, *which is foreseeable.*[2] The question of whether the potential serious danger was foreseeable necessarily depends on the circumstances of the case and rests in the hands of the fact finder. *See, e.g., Benham v. King,* 700 N.W.2d 314, 319 (Iowa 2005) ("The conduct necessary to satisfy the duty of reasonable care to inspect depends on the circumstances. Normally, it is a fact question to be decided by the jury." (internal citations omitted)).

At trial, Struve argued Payvandi had a duty to inspect the apartment for this serious latent defect. In doing so, she proposed the following jury instructions:

> The plaintiff may also recover under an alternative theory of implied warranty of habitability. The defendant as a landlord has a duty to discover latent defects even if the defendant has no actual knowledge of such defects provided that such defects can be discovered without taking extraordinary measures or making unreasonable expenditures of time and money. It is enough if the latent defect is discoverable by the defendant by reasonable inspection. Defendant warrants the habitability of the premises at the inception of the lease with the plaintiff and such implied warranty of habitability continues during the lease term.

> The plaintiff may also recover under the theory of implied warranty of habitabili-

ty if plaintiff proves the following propositions:

> a. There was a potential serious danger to the plaintiff foreseeable by the defendant in the premises heating system equipment and associated components.

> b. There was a latent defect in the premises heating system and associated components which could have been discovered without extraordinary difficulty by the defendant by reasonable inspection before passing inspection to the plaintiff.

> c. The defect in the heating system and associated components was a proximate cause of plaintiff's injury and damages.

> d. The nature and extent of injury and damages to the plaintiff.

> If the plaintiff has failed to prove any of these four propositions, the plaintiff is not entitled to damages under the theory of implied warranty of habitability.

The district court rejected these proposed instructions. When Struve objected and claimed she was entitled to an instruction on this separate theory, the court overruled her objection, stating its own instructions "embody the essential elements of the warranty of habitability [and therefore the theory] is being, in fact, submitted." The court went on to specify that the theory was contained in the following instructions:

### JURY INSTRUCTION NO. 11

The plaintiff must prove all of the following propositions:

1. The defendant knew or in the exercise of reasonable care should have

---

2. The additional language indicating that the landlord is not required to make extraordinary expenditures of time and money does not establish that the landlord has a duty to perform inspections for unforeseeable latent defects simply because such tests may be inexpensive. In this context, the trigger of the duty to perform an inspection is the foreseeability of a latent defect that could lead to serious danger.

known of a condition on the premises and that it involved an unreasonable risk of injury to a person in the plaintiff's position.

2. The defendant knew or in the exercise of reasonable care should have known:

   a. the plaintiff would not discover the condition, or

   b. the plaintiff would not realize the condition presented an unreasonable risk of injury, or

   c. the plaintiff would not protect herself from the condition.

3. The defendant was negligent in any one or more of the following ways:

   a. Failed to maintain in good and safe working order and condition all the heating appliances supplied by Landlord as required by the lease;

   b. Failure to comply with requirements of applicable building and housing codes materially effecting health and safety in the City of Cedar Rapids.

   c. Failure to maintain, test, and or inspect heating equipment and associated components as was usual and customary in the property management industry in the year 2002.

4. The negligence was a proximate cause of the plaintiff's damage.

5. The nature and extent of damage.

If the plaintiff has failed to prove any of these propositions, the plaintiff is not entitled to damages. If the plaintiff has proved all of these propositions, the plaintiff is entitled to damages in some amount.

## JURY INSTRUCTION NO. 12

The owner of premises is presumed to know all conditions on the premises that are caused or created by the owner. The owner of premises is not responsible for an injury suffered by a person on the premises which resulted from a condition of which the owner had no knowledge, unless the condition existed for a long enough time that in the exercise of reasonable care the owner should have known about it.

## JURY INSTRUCTION 13

You have received evidence of a custom or standard within the property management business to periodically inspect and maintain heating equipment. Conformity with a custom is evidence that the Defendant was not negligent and nonconformity is evidence that Defendant was negligent.

You have received evidence of applicable housing code provisions. Conformity with the provisions of the housing code is evidence that Defendant was not negligent and violations of its provision are evidence that Defendant was negligent.

Such evidence is relevant and you should consider it, but it is not conclusive proof.

## JURY INSTRUCTION 14

Contained within the obligation to maintain equipment is an obligation to periodically inspect the equipment for needed maintenance.

Upon our review of the court's instructions and case law defining the implied warranty of habitability, we find the court's instructions do not set forth Struve's alternative claim. First, the verdict form for the jury did not reference the implied warranty of habitability or give the jury the option to find liability under this claim. Instead, the verdict form simply stated "Was the defendant negligent?" Also, the court's instructions did not accurately describe when the landlord has a duty to make a reasonable inspection.

The standard is that the landlord has a duty to conduct a reasonable inspection when there is a foreseeable potential serious danger. The jury instructions did not set forth this foreseeability requirement. The instructions only contained a temporal requirement indicating the landlord was not liable "unless the condition existed for a long enough time that in the exercise of reasonable care the owner should have known about it." While a temporal analysis may be a factor in the foreseeability analysis, this instruction does not represent the jury's fact-finding role to determine whether the potential danger was foreseeable. Therefore, we find the jury instructions do not embody the essential elements of the warranty of habitability.

***Resulting Prejudice.*** Our case law clearly indicates that the implied warranty of habitability is a cause of action that is separate from a common law negligence claim. *See Vazquez,* 564 N.W.2d at 429 ("Negligence and the implied warranty of habitability are two different causes of action with distinct elements."). Because the court did not instruct the jury on Struve's theory of liability under the implied warranty of habitability and the other jury instructions did not embody the elements of that theory, Struve was prejudiced. We cannot discern whether the jury reached the merits of Struve's implied warranty claim; therefore, we must reverse and remand for a new trial so that a jury can properly consider this issue.

### B. Negligence Per Se

■ Struve contends the trial court erred when it refused to submit her negli-

gence per se theory to the jury. Because this issue will necessarily arise on remand, we will address it here.

Struve claims Iowa Code section 562A.15(1)(d) creates an affirmative duty to maintain and where the landlord does not maintain, the landlord is negligent per se. Section 562A.15(1)(d) states, in relevant part:

1. The landlord shall:

    a. Comply with the requirements of applicable building and housing codes materially affecting health and safety.[3]

    . . . .

    d. Maintain in good and safe working order and condition all electrical, plumbing, sanitary, heating, ventilating, air-conditioning, and other facilities and appliances, including elevators, supplied or required to be supplied by the landlord.

Struve argues that when the victim is within the class of persons the statute intends to protect, a duty is created, and a violation of that duty is negligence per se. *See Timm v. Clement,* 574 N.W.2d 368, 372 (Iowa Ct.App.1997). Struve further argues that because the Uniform Residential Landlord and Tenant Act ("URLTA") protects tenants as a class and provides tenants with rights, any violation of a statutory duty contained in the URLTA constitutes negligence per se.

■ We do not read section 562A.15(1)(d) or the URLTA so broadly. Generally, violation of a statutory duty is

---

**3.** Section 29.12(*l*) of the Cedar Rapids Municipal Code requires that landlords maintain "fuel burning heating equipment ... in good and safe working condition...." It also requires an inspection every seven years by "a licensed mechanical contractor or certified service technician for proper drafting, combustion and integrity of total operation system ... and [a] determin[ation] that carbon monoxide levels are within safe limits for human habitation." Pursuant to the municipal code section, Payvandi had the subject furnaces inspected in November 1996. The furnaces passed inspections and were certified as safe. At the time of the incident, the furnaces were within the seven-year inspection cycle.

negligence per se. *Wright v. Welter,* 288 N.W.2d 553, 556 (Iowa 1980). However, in order to establish a violation the statute must have enough specificity to establish a standard of conduct. *See Griglione v. Martin,* 525 N.W.2d 810, 812 (Iowa 1994) ("[I]n order for the violation of rules of conduct to constitute negligence per se, those rules must establish specific standards that are to be followed unwaveringly in all instances."). Section 562A.15(1)(d) does not define what constitutes a good and safe working condition in a furnace, nor does it define adequate maintenance for a furnace. It merely indicates that the landlord shall maintain heating appliances in a safe and working order. The benefit of requiring an absolute and specific standard in a statute before imposing negligence per se is that those who have a duty under the statute can conform their behav-

ior accordingly. This statute does not contain a specific standard of conduct from which a fact finder could find a violation. Therefore we find the trial court did not err when it refused to submit Struve's negligence-per-se theory to the jury.

## III. Conclusion

Having considered all issues, whether or not specifically addressed in this opinion,[4] we reverse the judgment in this matter and remand for a new trial.

**REVERSED AND REMANDED WITH DIRECTIONS.**

---

4. Because this case is remanded for a new trial, we need not address the court's evidentiary ruling concerning Valerie Walton's testi-mony. The district court shall consider this issue, if it arises, in the context of the new trial.