# IN THE COURT OF APPEALS OF IOWA

No. 19-0554
Filed July 22, 2020

**RAYMOND VERN BUTLER and MARY BUTLER,**
　　Plaintiffs-Appellants,

**vs.**

**WELLS FARGO FINANCIAL, INC.,**
　　Defendant-Appellee.
_____

　　Appeal from the Iowa District Court for Polk County, Samantha Gronewald,

Judge.


　　Plaintiffs appeal a summary judgment ruling in defendant's favor.

**AFFIRMED.**



　　Kyle T. Reilly of Thomas J. Reilly Law Firm, P.C., Des Moines, for

appellants.

　　Thomas H. Walton of Nyemaster Goode, PC, Des Moines, for appellee.



　　Heard by Bower, C.J., and Doyle and Schumacher, JJ.

**BOWER, Chief Judge.**

Raymond and Mary Butler appeal a district court summary judgment ruling dismissing their suit against Wells Fargo Financial, Inc. We conclude Wells Fargo Financial was not exercising possession and control over the premises at the time of Raymond Butler's alleged injuries and did not owe Butler a duty of care. We affirm.

## I. Background Fact & Proceedings

In 2006, Wells Fargo Financial, Inc. (WF Financial), a subsidiary of Wells Fargo & Company, obtained title to property at 1963 Bell Avenue, Des Moines.

In 2009, Wells Fargo Bank, N.A. (WFB)—a separate and distinct subsidiary of Wells Fargo & Company—entered into a general master services agreement with CB Richard Ellis Group (CBRE).[1] On September 7, 2011, WFB and CBRE executed a Statement of Work for Property Management Services Administrative Buildings effective through December 2016. The services CBRE was to provide—asset, operations, and facilities management (including maintenance)—were to support WFB's corporate properties group. Among the properties covered by the WFB-CBRE property management statement of work was 1963 Bell.[2]

In August 2015, Raymond Butler—a CBRE employee—notified CBRE of a mold problem at 1963 Bell. On October 23, Iowa Occupational Safety and Health

---

[1] The agreement permitted "affiliates" of WFB—including parent company Wells Fargo & Company and its subsidiaries—to procure the services of CBRE through the execution of a statement of work by the affiliate. No evidence of any agreement between CBRE and WF Financial was offered.

[2] The spreadsheet entry indicated 1963 Bell was "Owned," not "Leased." Ken Kuckelman, a property portfolio manager for WFB, submitted an affidavit that 1963 Bell was under the possession and control of WFB subject to the management services of CBRE.

issued a notice of complaint relating to 1963 Bell.[3] CBRE and WFB had a conference call regarding the mold, and WFB approved CBRE arranging the cleanup.

CBRE directed Butler to remove a number of ceiling tiles with mold on them at 1963 Bell. Butler alleges he sustained injuries due to mold exposure arising from his work.

On October 20, 2017, Butler and his wife Mary filed suit against WF Financial alleging negligence of the property owner and loss of consortium.[4] In its answer to the Butlers' petition, WF Financial misidentified WFB as the owner of the property.[5] In December, the Butlers filed a motion to amend their petition to substitute WFB as defendant, which the court granted two days later. In its answer to the amended petition, WFB erroneously admitted ownership of the property.

In August 2018, the Butlers filed another motion to amend petition, asking to reinstate WF Financial as a defendant, stating, "No evidence supports the assertion that Wells Fargo Bank, N.A. is the owner of the 1963 Bell Ave. property and not Wells Fargo Financial, LLC." The district court granted the motion to amend, reinstating WF Financial as a defendant.

WFB filed a motion for summary judgment, and the district court granted it, dismissing WFB as defendant because WFB was not provided notice of the claim

---

[3] The notice was addressed to Wells Fargo Mortgage.

[4] WF Financial listed 1963 Bell for sale in February 2015 and sold the property in December 2016. Kuckelman completed a form for the Polk County Assessor's Office regarding conditions of the sale.

[5] WF Financial and WFB were at all relevant times each subsidiaries of Wells Fargo & Company, but were separate and distinct corporate entities. Title deeds show WF Financial owned 1963 Bell from 2006 until the end of 2016.

until after the limitations period had passed. *See* Iowa Code § 614.1(2) (2017) (providing a two-year statute of limitations on personal injury suits); Iowa R. Civ. P. 1.402(5) (requiring later-added defendants receive notice of the action "within the period provided by law for commencing the action"). In its ruling, the court made a finding that "the record in this case demonstrates that WF Financial and WF Bank are separate legal entities." The Butlers did not appeal the ruling.

WF Financial also filed for summary judgment, stating it was not in possession or control of 1963 Bell in October 2015 and did not owe a duty of care to Butler.[6] The Butlers asserted a question of fact existed whether WFB was acting as agent for WF Financial, precluding a summary judgment. In its ruling on the new motion, the district court reasoned WF Financial's duty of care rested "on whether or not WF Financial was in possession of 1963 Bell in 2015." The court observed that although WF Financial was the owner of the property, it had "'loaned' its possessory rights to WFB such that WF Financial's relationship to 1963 Bell was the same as that of an absentee landlord and not a possessor." Because WF Financial was not the possessor of the property, it did not owe a duty of care to the Butlers. The court granted WF Financial's motion for summary judgment.

The Butlers appeal.

## II. Standard of Review

We review a summary judgment ruling for correction of errors at law. *MidWestOne Bank v. Heartland Co-op*, 941 N.W.2d 876, 882 (Iowa 2020).

---

[6] In support of its summary judgment motion, WF Financial submitted an affidavit from a WFB property manager stating WFB "possessed and controlled" the property at 1963 Bell and included a copy of the agreement between WFB and CBRE.

Summary judgment is appropriate when there is no genuine issue of material fact, the only conflict is the legal consequences of undisputed facts, "and the moving party is entitled to judgment as a matter of law." *Id.* (citation omitted). Summary judgment is usually not appropriate in negligence cases, as negligence or causation questions are normally for the jury. *Thompson v. Kaczinski*, 774 N.W.2d 829, 832 (Iowa 2009). "The moving party bears the burden of demonstrating the nonexistence of a material fact question." *Banwart v. 50th St. Sports, L.L.C.*, 910 N.W.2d 540, 545 (Iowa 2018). "However, the nonmoving party may not rest upon the mere allegations of his [or her] pleading but must set forth specific facts showing the existence of a genuine issue for trial." *Id.* (citation omitted) (alteration in original). "We review evidence in the light most favorable to the nonmoving party." *MidWestOne Bank*, 941 N.W.2d at 882.

### III. Analysis

"Negligence is conduct that falls short of the standard of care established by law for the protection of others against unreasonable risks of harm." *Benham v. King*, 700 N.W.2d 314, 317 (Iowa 2005). "To establish a claim for negligence, the plaintiff must normally prove: (1) the existence of a duty owed by the defendant to conform to a standard of care, (2) the failure to conform to the standard, (3) proximate cause, and (4) damages." *Id.*

In determining the existence of a duty, the court considers "(1) the relationship between the parties, (2) reasonable foreseeability of harm to the person who is injured, and (3) public policy considerations." *Thompson*, 774 N.W.2d at 834 (citation omitted). "Whether a duty arises out of a given relationship is a matter of law for the court's determination." *Id.*

Butler asserts WF Financial failed in its duty to maintain the premises in a reasonably safe condition by failing to remove the ceiling tiles earlier and ordering the removal of the ceiling tiles "without ensuring the safety and health of the workers." WF Financial answered that although it owned the property, it was not the possessor of the property at the time of Butler's injury and owed him no duty of care.

Ownership alone is not sufficient to impose liability for a premises defect. *Van Essen v. McCormick Enters. Co.*, 599 N.W.2d 716, 719–20 (Iowa 1999); *Wiedmeyer v. Equitable Life Assurance Soc'y of U.S.*, 644 N.W.2d 31, 33 (Iowa 2002) ("[T]he owner of land may in some situations loan its possession to another, thus rendering that party the possessor and negating the owner's status as such."). "As a general rule, a landlord is not liable for injuries caused by the unsafe condition of the property arising after it is leased, provided there is no agreement to repair." *Allison v. Page*, 545 N.W.2d 281, 283 (Iowa 1996). The principle underlying the rule and its assorted exceptions is "liability is premised upon control." *Id.*; *see also Dahlin v. Archer-Daniels-Midland Co.*, No. 3:14-cv-00085-SMR-HCA, 2016 WL 4435095, at *6 (S.D. Iowa Feb. 4, 2016) ("[B]oth the governing sections of the Restatement (Third) and Iowa case law make clear that control is a prerequisite to imposing liability on a land possessor/lessor."). The duty of care turns on possession, which requires occupation and control of the premises. *See Van Essen*, 599 N.W.2d at 719. A "possessor" of land is defined as:

> (a) a person who is in occupation of the land with intent to control it or

> (b) a person who has been in occupation of land with intent to control it, if no other person has subsequently occupied it with intent to control it, or
> (c) a person who is entitled to immediate occupation of the land, if no other person is in possession under clauses (a) and (b).

*Id.* (quoting Restatement (Second) of Torts § 328E) (emphasis omitted). "[L]iability is not imposed unless the possessor 'knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm.'" *Benham*, 700 N.W.2d at 318 (citation omitted). "Liability is not imposed in the absence of such actual or constructive knowledge of a dangerous condition because this knowledge is essential to establish a breach of duty." *Id.*

The Butlers claim WF Financial retained a degree of control over the premises and should be responsible for dangerous conditions there. Retained control is a recognized exception to the rule of nonliability of an owner/lessor. *Van Essen*, 599 N.W.2d at 720. In those portions of a property where the owner has retained control—alone or jointly with tenants—the owner may be liable. *Fouts ex rel. Jensen v. Mason*, 592 N.W.2d 33, 38 (Iowa 1999); *see also Stupka v. Scheidel*, 56 N.W.2d 874, 877–78 (Iowa 1953).

Rather than introduce evidence WF Financial exercised possession or control, the Butlers attack the credibility of Kuckelman's affidavit statement that WFB possessed and controlled 1963 Bell subject to CBRE management. Credibility determinations are not appropriate on summary judgment—they are the responsibility of the fact finder. *Frontier Leasing Corp. v. Links Eng'g, LLC*, 781 N.W.2d 772, 776 (Iowa 2010). Yet, we must construe the record in favor of the Butlers and, therefore, we do not rely on the affidavit as an undisputed fact. While the Butlers contest the affidavit, they do not contest the veracity of the WFB-CBRE

contract, included as an attachment to the affidavit, and we do consider it in our evaluation.

The Butlers suggest WFB was merely a licensee with no interest in the property. To support their claims, the Butlers introduced a copy of a license agreement dated September 30, 2016, between WF Financial and a new tenant for the property at 1963 Bell. The district court considered the agreement to be the Butlers' strongest evidence but noted even this agreement licensed the premises "as is" and provided "WF Financial retained no responsibility for the care and/or maintenance of the 'vacant retail bank facility.'" The agreement specifically provided WF Financial was not responsible for any repair or maintenance and indemnified WF Financial from any claims of injury arising from or related to the use and occupancy of the property. Contrary to the Butlers' assertion, this agreement does not support their theory WF Financial exerted possession and control over 1963 Bell in a manner giving rise to a duty to those on the premises. Rather, it indicates the party occupying the premises had possession and control for purposes of liability.

The evidence presented does not include any documentation of a formal lease between WF Financial and WFB, or any evidence of WFB paying rent to WF Financial. However, neither does any evidence indicate WFB was authorized to act as an agent for WF Financial and enter into long-term contracts relating to WF Financial property. No documents or asserted facts indicate WF Financial made any decisions regarding the upkeep of 1963 Bell around time of Butler's injury or executed a separate statement of work with CBRE under the umbrella of the WFB-CBRE agreement.

Instead, the WFB-CBRE contract shows WFB exercised control over the 1963 Bell location for at least four years before the alleged mold exposure; the property was included among the properties for which WFB contracted directly with CBRE for full property management services. It was CBRE that first discovered the mold problem, CBRE consulted with WFB regarding the mold issue, and WFB directed CBRE and its employee Butler to fix the mold problem. There is no evidence WF Financial had any input in the actions leading to Butler's alleged injury.

The Butlers also contend because WF Financial entered into a contract to list and sell the property in February 2015, this shows WF Financial retained control over the property and should be liable. While the rights to possess, use, and dispose are all part of the group of rights known as property, the owner has the right to exercise these rights separately. *See United States v. Gen Motors Corp.*, 323 U.S. 373, 378 (1945) (noting the term property may "denote the group of rights inhering in the citizen's relation to the physical thing, as the right to possess, use and dispose of it."); *Bormann v. Bd. of Supervisors*, 584 N.W.2d 309, 315 (Iowa 1998). The exercise of one right does not necessarily mean exercising the other rights. For example, property owners often lease the right to use and possess the property while retaining their right to sell the property. *See* Restatement (Second) of Property §§ 1.2, 15.1 (noting a landlord-tenant relationship exists when "the landlord transfers the rights of possession" and that the interests of each "are freely transferable"). Unless the lease provides otherwise, the owner may still sell the property while the lessee retains possession and control of the property. *See Alta Vista Props., LLC v. Mauer Vision Ctr., PC,*

855 N.W.2d 722, 729–31 (Iowa 2014) (examining a landlord's right to exhibit a leased premises to prospective or actual buyers based on the lease and statutory language).

Thus, WF Financial's exercise of its retained right to sell does not mean it was exercising the right to possess and control alone or jointly with WFB. The Butlers have offered no evidence of WF Financial exercising the right of possession and control at the time of Butler's alleged injury.

From our review of the pleadings, affidavits, and documents presented, we determine WF Financial was not a possessor of 1963 Bell in October 2015. Because WF Financial was not the possessor of the property, it did not owe a duty of care to Butler, and we affirm the district court's ruling.

**AFFIRMED.**