# IN THE SUPREME COURT OF IOWA

No. 11–0085

Filed April 5, 2013

**CURTIS GENE HOYT,**

    Appellant,

vs.

**GUTTERZ BOWL & LOUNGE L.L.C.,**

    Appellee.

---

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Guthrie County, Bradley McCall, Judge.

The plaintiff brought a negligence action alleging he was assaulted and injured on the defendant's premises. The district court granted the defendant's motion for summary judgment and the court of appeals reversed. Defendant sought, and this court granted, further review of the decision of the court of appeals. **DECISION OF COURT OF APPEALS AFFIRMED; DISTRICT COURT JUDGMENT REVERSED AND CASE REMANDED.**

Gary D. Dickey Jr. of Dickey & Campbell Law Firm, PLC, Des Moines, for appellant.

Mark J. Wiedenfeld and James W. Russell of Wiedenfeld & McLaughlin, L.L.P., Des Moines, for appellee.

**HECHT, Justice.**

The plaintiff sued a bar for injuries sustained when he was assaulted in the bar's parking lot. The district court granted summary judgment in favor of the bar. The court of appeals reversed the district court's ruling, concluding questions of fact precluded summary judgment. On further review, we affirm the court of appeals decision and reverse the district court's grant of summary judgment.

## I. Factual and Procedural Background.

The summary judgment record taken in the light most favorable to plaintiff–appellant Hoyt supports the following factual findings. Defendant–appellee Gutterz Bowl & Lounge (Gutterz) is a bowling alley and tavern located in Guthrie Center, Iowa. On March 20, 2009, Curtis Hoyt and several members of his construction crew finished work and went to Gutterz for refreshments. Curtis Knapp was also a customer at Gutterz that afternoon. Hoyt soon came to believe that Knapp was scowling at him. Hoyt and Knapp had formerly been friendly, but tension had arisen between them as a result of Hoyt's alleged mistreatment of the sister of Knapp's friend. The record reveals no evidence tending to prove the staff of Gutterz had any knowledge of this history between Hoyt and Knapp.

After consuming a few beers, Hoyt and coworker Chris Brittain approached and verbally confronted Knapp. Knapp did not respond and continued to scowl at Hoyt. The waitress serving Hoyt and Brittain observed their behavior with concern and threatened to discontinue serving them unless they calmed down. Hoyt and Brittain ignored the waitress's warning and thus she requested and secured permission from Gutterz's owner, Rodney Atkinson, to discontinue serving them. Atkinson, who had been preparing food in the kitchen, went to the bar

area to assess the situation. Hoyt and Brittain complained to Atkinson that they were no longer being served and continued to taunt Knapp.

Shortly thereafter, Atkinson grew concerned that an altercation might occur. He requested that Hoyt and Brittain leave.[1] Hoyt finished his beer and exited the tavern. As Hoyt walked through the parking lot toward his vehicle, somebody approached him from behind and struck him in the back of the head, knocking him unconscious. Hoyt suffered several injuries including a compound fracture of his ankle. Knapp admitted to police who later arrived on the scene that he had struck Hoyt, but claimed he had done so in self-defense.[2]

On September 25, 2009, Hoyt filed this action alleging that Knapp and Gutterz were liable for the injuries he sustained when Knapp assaulted him. Gutterz moved for summary judgment, alleging Gutterz owed Hoyt no duty of reasonable care, there was no evidence of a breach of any duty, and the assault by Knapp and Hoyt's injury were not foreseeable. The district court granted Gutterz's motion for summary judgment and dismissed Gutterz from the lawsuit. The district court found as a matter of law that the assault in the parking lot and Hoyt's resulting injury were not foreseeable to Gutterz. Having found Hoyt's injury was not foreseeable to Gutterz, the district court further found

> insufficient evidence to generate a genuine issue of material fact on the question of whether Gutterz employees failed to exercise reasonable care to discover the likelihood of harm or

---

[1]Atkinson's account suggests he escorted the men to their trucks in the parking lot and returned to the kitchen. Hoyt and Brittain instead recalled that after Atkinson ordered them to leave, they exited the tavern and walked themselves to their vehicles.

[2]The police ultimately charged both Hoyt and Knapp with disorderly conduct as a result of the incident.

failed to provide an adequate warning after discovering a potential danger to Hoyt.[3]

We granted Hoyt's application for interlocutory appeal, and we transferred the case to the court of appeals. The court of appeals reversed the district court's summary judgment ruling. In reversing, the court of appeals cited our opinion in *Thompson v. Kaczinski*, 774 N.W.2d 829 (Iowa 2009). In *Thompson,* we adopted the general duty formulation set forth in section 7 the Restatement (Third) of Torts: Liability for Physical and Emotional Harm and explained that "the assessment of the foreseeability of a risk" is no longer part of the duty analysis in evaluating a tort claim, and instead is to be considered when the fact finder decides whether a defendant has failed to exercise reasonable care. *Id.* at 835. Consistent with its understanding that foreseeability is no longer part of the duty determination, the court of appeals applied section 40 of the Restatement (Third), entitled "Duty Based on Special Relationship With Another," in analyzing Hoyt's claim. Concluding Gutterz owed Hoyt a duty under section 40 and finding Hoyt had raised fact questions as to foreseeability related to the issues of breach of duty and scope of liability, the court of appeals reversed the summary judgment ruling. We granted Gutterz's application for further review.

## II. Scope of Review.

The district court's ruling on a motion for summary judgment is reviewed for correction of errors of law. *Id.* at 832. A party is entitled to summary judgment when the record shows no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of

---

[3]In reaching its conclusion, the court applied section 344 of the Restatement (Second) of Torts, entitled "Business Premises Open to Public: Acts of Third Persons or Animals."

law. Iowa R. Civ. P. 1.981(3). On a motion for summary judgment, the court must: "(1) view the facts in the light most favorable to the nonmoving party, and (2) consider on behalf of the nonmoving party every legitimate inference reasonably deduced from the record." *Van Fossen v. MidAmerican Energy Co.*, 777 N.W.2d 689, 692 (Iowa 2009).

### III. Discussion.

Hoyt contends the district court erred in concluding as a matter of law that Gutterz did not breach a duty of reasonable care under these circumstances. Further, Hoyt contends, the district court erred in its consideration of foreseeability of injury to Hoyt in making its summary judgment ruling. Gutterz urges that the summary judgment ruling should be affirmed because: (1) the district court correctly analyzed the question of duty, (2) even if a duty existed, Gutterz acted reasonably as a matter of law, and (3) Hoyt's injuries here were, as a matter of law, outside the scope of harms typically resulting from the risks associated with Gutterz's conduct.

**A. Duty.** Before examining the record for a factual question regarding whether Gutterz breached a duty to Hoyt, we must consider whether Gutterz owed Hoyt a duty of care, and if so, the nature of that duty under these circumstances. While summary adjudication is rarely appropriate in negligence cases, the determination of whether a duty is owed under particular circumstances is a matter of law for the court's determination. *Thompson*, 774 N.W.2d at 834; *Sankey v. Richenberger*, 456 N.W.2d 206, 207 (Iowa 1990). Traditionally, Iowa courts examining whether a landowner has a duty to protect visitors from the conduct of third parties relied upon section 344, comment *f*, of the Restatement (Second) of Torts to conclude that a property owner "is ordinarily under no duty to exercise any care until he knows or has reason to know that

the acts of the third person are occurring, or are about to occur." *Galloway v. Bankers Trust Co.*, 420 N.W.2d 437, 438 (Iowa 1988); *Martinko v. H-N-W Assocs.*, 393 N.W.2d 320, 322–23 (1986); Restatement (Second) of Torts § 344 cmt. *f*, at 225 (1965) [hereinafter Restatement (Second)]. That general proposition was subject to the caveat that a duty would be imposed in scenarios where the property owner knew or had reason to know of a likelihood of third party conduct that could endanger visitors or where the place or character of the business was such that the property owner should reasonably anticipate careless or criminal conduct by third parties. *Galloway*, 420 N.W.2d at 439–40; *Martinko*, 393 N.W.2d at 322–23; Restatement (Second) § 344 cmt. *f*, at 225–26.

Recently, in *Thompson*, we examined not a landowner–visitor scenario, but a scenario in which the trampoline of a landowner had been blown by high winds into a nearby roadway, obstructing the travel of and causing injury to a driver. 774 N.W.2d at 831–32. We questioned and then rejected an assessment of foreseeability of risk in determining whether the landowner owed the driver a duty. We adopted the general duty formulation of section 7 of the Restatement (Third) and explained:

> An actor ordinarily has a duty to exercise reasonable care when the actor's conduct creates a risk of physical harm. Thus, in most cases involving physical harm, courts need not concern themselves with the existence or content of this ordinary duty, but instead may proceed directly to the elements of liability set forth in section 6 [of the Restatement (Third)]. The general duty of reasonable care will apply in most cases, and thus courts can rely directly on section 6 and need not refer to duty on a case-by-case basis.

*Id.* at 834–35 (citations and internal quotation marks omitted). We joined the drafters of the Restatement (Third) in explicitly disapproving of the use of foreseeability, or lack thereof, in making no-duty determinations. *Id.* at 835. Instead, we explained, no-duty rulings

should be limited to exceptional cases in which " 'an articulated countervailing principle or policy warrants denying or limiting liability in a particular class of cases.' " *Id.* (quoting Restatement (Third) of Torts: Liability for Physical & Emotional Harm § 7(b), at 77 (2010) [hereinafter Restatement (Third)]). Such reasons of principle or policy justifying departure from a general duty to exercise reasonable care would not depend on the foreseeability of harm in any given case. *Id.* Instead, assessment of foreseeability should be allocated to the fact finder, as part of its determination of whether appropriate care has been exercised in any given scenario. *Id.*

Section 40 of the Restatement (Third) describes duty principles, some of which overlap with section 7's general duty, more specifically for special relationships such as landowner–visitor or business–patron relationships, as follows:

> (a) An actor in a special relationship with another owes the other a duty of reasonable care with regard to risks that arise within the scope of the relationship.
>
> (b) Special relationships giving rise to the duty provided in Subsection (a) include:
>
> > (1) a common carrier with its passengers,
>
> > (2) an innkeeper with its guests,
>
> > (3) a business or other possessor of land that holds its premises open to the public with those who are lawfully on the premises,
>
> . . . .

Restatement (Third) § 40, at 39 (2012). Comment *g* explains that section 40's contemplated duties apply even in cases involving harm caused by a third party:

> The duty described in this Section applies regardless of the source of the risk. Thus, it applies to risks created by the

individual at risk as well as those created by a third party's conduct, whether innocent, negligent, or intentional.

*Id.* § 40 cmt. *g,* at 42. Therefore, comment *j* explains, "[b]usinesses . . . who hold their land open to the public owe a duty of reasonable care to persons lawfully on their land who become ill or endangered by risks created by third parties." *Id.* § 40 cmt. *j,* at 43–44. Section 40 thus modifies the general proposition of section 37 that actors typically owe no duty to protect victims from the conduct of third parties,[4] and clarifies that a duty of reasonable care applies as a result of these special relationships.

For the same reasons we found the Restatement (Third) compelling in *Thompson*, we find it compelling in the tavern owner–patron context. Recognizing that a duty exists whenever an actor has created a risk of harm and that risks arise out of the special relationships contemplated by section 40 encourages simplicity and predictability. Limiting no-duty rulings to exceptional problems of policy or principle promotes judicial transparency, encouraging judges to justify in explicit terms any reasons for declining to impose a duty in a given scenario. *Thompson*, 774 N.W.2d at 835 (citing Restatement (Third) § 7 cmt. *j,* at 82). Further, foreseeability is central to the fact finder's inquiries regarding breach and the range of harms for which an actor may be liable. Any overlap in the duty inquiry is likely to be redundant and confusing, and may well frustrate longstanding rationales for specific allocations of decision-making power between the judge and jury. *Id.* at 835 (removing

---

[4]Section 37 states a principle complementary to the general duty principle of section 7: there is no duty of care when another is at risk for reasons other than those created by an actor's conduct. As contemplated by sections 7 and 19, an actor's conduct may create risk by exposing another to the improper conduct of third parties. All risks created by an actor's conduct or course of conduct must be evaluated in determining whether the section 37 principle applies.

foreseeability from the duty analysis " 'protect[s] the traditional function of the jury as fact finder' " (quoting Restatement (Third) § 7(b) cmt. *j*, at 98–99)); 1 Dan B. Dobbs, *The Law of Torts* § 159, at 503–04 (2d ed. 2011) ("Foreseeability [of harm] is seldom if ever a pure fact . . . [and] is normally a jury question."). The redundancy also gives rise to the possibility that judge and jury may reach inconsistent results regarding foreseeability, at odds with goals of procedural fairness, predictability, and treating like cases alike. For these reasons, we emphasize again our adoption of the duty analysis of the Restatement (Third).

The district court clearly considered the foreseeability of the assault and Hoyt's resulting injury in granting summary judgment for Gutterz, but whether the judgment was based on a no-duty determination or a reasonable care determination is less clear.[5] Removing foreseeability from the duty analysis, we must consider whether some principle or strong policy consideration justifies exempting Gutterz, or the class of tavern owners in general, from the duty to exercise reasonable care. The parties have not advanced, and we cannot discern, any such considerations compelling exemption of tavern owners from the duty. Tavern owners fit squarely within the class of business owners contemplated by section 40(b)(3). Section 40 enumerates several justifications for requiring business owners to exercise due care:

---

[5]As noted above, the district court specifically found there was insufficient evidence to raise a fact question regarding whether Gutterz employees had exercised reasonable care. In describing the applicable law, however, the court explained that "in construing the duty of the possessor of land the Iowa Supreme Court, in *Martinko v. H-N-W Assocs.*, 393 N.W.2d 320 (Iowa 1986), observed that the ultimate issue for determining liability is one of foreseeability." The parties appear to disagree on appeal as to the meaning of the district court's findings. Gutterz argues that the district court correctly found no duty based on lack of foreseeability, while Hoyt takes issue with the court's foreseeability determination without specifying whether the court made the finding in the duty inquiry or the reasonable care inquiry.

> [T]he relationship identifies a specific person to be protected and thus provides a more limited and justified incursion on autonomy, especially when the relationship is entered into voluntarily. In addition, some relationships necessarily compromise a person's ability to self-protect, while leaving the actor in a superior position to protect that person. Many of the relationships also benefit the actor.

Restatement (Third) § 40 cmt. *h,* at 43. We are convinced these justifications are applicable to tavern owners and decline to exempt them from the duty to exercise reasonable care. Accordingly, we conclude Gutterz owed Hoyt a duty of reasonable care under the circumstances presented here. We now turn to the question of whether Hoyt raised a genuine issue of material fact regarding the alleged breach of this duty.

**B. Reasonable Care.** Hoyt contends the district court erred in concluding Gutterz had not, as a matter of law, failed to exercise reasonable care. Gutterz counters that it acted reasonably.

While taverns are not insurers of patrons' safety against third-person criminal attacks, various jurisdictions have explained taverns must make reasonable efforts to maintain order and supervise and control patrons. *See, e.g., Gunter v. Vill. Pub,* 606 N.E.2d 1310, 1312 (Ind. Ct. App. 1993); *Sweenor v. 162 State St., Inc.,* 281 N.E.2d 280, 281–82 (Mass. 1972); *Mettling v. Mulligan,* 225 N.W.2d 825, 827–28 (Minn. 1975); *Flynn v. Audra's Corp.,* 796 N.W.2d 230, 232–33 (Wis. Ct. App. 2011); *see also* Restatement (Second) § 344 cmt. *f,* at 225–26. The Restatement (Third) adds that in situations involving section 40 affirmative duties, section 3's reasonable care analysis may be applied in determining whether a particular failure to act is unreasonable. Restatement (Third) § 3 cmt. *c,* at 30. Section 3 explains that a person

> acts negligently if the person does not exercise reasonable care under all the circumstances. Primary factors to consider in ascertaining whether the person's conduct lacks reasonable care are the foreseeable likelihood that the

person's conduct will result in harm, the foreseeable severity of any harm that may ensue, and the burden of precautions to eliminate or reduce the risk of harm.

*Id.* § 3, at 29.

In addition, section 19's specific application of the section 3 principles explains that "[t]he conduct of a defendant can lack reasonable care insofar as it foreseeably combines with or permits the improper conduct of the plaintiff or a third party." *Id.* § 19, at 215. Section 19 sets forth the following examples of situations where the defendant may create or increase the likelihood of injury by a third person:

> For example, the defendant's conduct may make available to the third party the instrument eventually used by the third party in inflicting harm; or that conduct may bring the plaintiff to a location where the plaintiff is exposed to third-party misconduct; or that conduct may bring the third party to a location that enables the third party to inflict harm on the plaintiff; or the defendant's business operations may create a physical environment where instances of misconduct are likely to take place; or the defendant's conduct may inadvertently give the third party a motive to act improperly.

Restatement (Third) § 19 cmt. *e*, at 218.[6]

That a tavern may create a physical environment where instances of misconduct are likely to take place raises converging questions of reasonable care and the appropriate scope of liability for the defendant. Restatement (Third) § 19 cmt. *c*, at 216–17. In a tavern, for example, the environment may foreseeably bring about the misconduct of a third

---

[6]We note that in some bar owner–patron cases, the bar's duty may be purely affirmative because the bar has had no role in creating the risk of harm that arises. In other cases, the bar may play a role in creating the risk, whether as illustrated in section 19, or in some other manner. In those cases, the source of the duty may be the general duty described in *Thompson* and section 7 of the Restatement (Third). *Thompson*, 774 N.W.2d at 834–36. Regardless the source of the duty, the duty is one of reasonable care. Restatement (Third) § 40 cmt. *d*, at 40. We emphasize, however, that what constitutes reasonable care may depend on the circumstances, and whether the duty is purely affirmative or more general may be a circumstance relevant in the fact finder's consideration of reasonable care. *Id.* at 41.

party, resulting in injury to a plaintiff. While the foreseeability of misconduct raises an issue of the appropriate level of care, it also raises the issue of whether the harm suffered by the plaintiff is within the range of risks that may make the defendant's conduct negligent in failing to exercise that care. *Id.* In considering this overlap, we have previously observed that where liability is based on the intentional acts of a third party, we must take care to avoid requiring excessive precaution relating to these acts, even when the improper conduct may be regarded as foreseeable in the abstract. *Brokaw v. Winfield-Mt. Union Cmty. Sch. Dist.*, 788 N.W.2d 386, 392 (Iowa 2010).

In *Brokaw*, for example, we adjudicated a claim that a school district had failed to control the conduct of one of its students. *Id.* at 388. The plaintiff, a high-school basketball player who alleged he was injured by an opposing player during a game, appealed a decision in favor of the defendant school district after a bench trial. *Id.* The plaintiff argued the alleged assault by the defendant district's student athlete was foreseeable because the student athlete had taken a swing during the game at another player within view of his coaches and had committed an egregious foul. *Id.* at 394. We observed, however, that there was no evidence in the record that the opposing player had a history of physically dangerous conduct. *Id.* We therefore concluded there was substantial evidence supporting the trial court's view that the assault was unforeseeable and affirmed its ruling that the school district had not failed to exercise reasonable care. *Id.*

By contrast, section 19 of the Restatement (Third) illustrates scenarios where an actor's knowledge of the risk of negligent or intentional third-party conduct may provide a basis for liability as follows:

> [A]n actor engaging in certain conduct can foresee a considerable risk, either on account of the general prospect of other persons' negligence during the relevant frame of time and place, or because the actor has knowledge of the propensities of the particular person or persons who are in a position to act negligently.

Restatement (Third) § 19 cmt. *f*, at 219.

Here, the district court found that Gutterz exercised reasonable care as a matter of law, based largely on the notion that the information available to Gutterz at the time failed to suggest any possibility of harm to Hoyt. Hoyt and Brittain initiated the verbal conflict with Knapp, reasoned the court, and thus, Gutterz could expect harm to Knapp but had no reason to expect harm to Hoyt. Mindful of section 19's instructions that foreseeability should be evaluated in the relevant frame of time and place, and that foreseeability may arise in environments where instances of physical misconduct are likely to take place, we disagree that the record established as a matter of law that an injury to Hoyt was unforeseeable. Gutterz's duty of reasonable care applied "regardless of the source of risk." *Id.* § 40 cmt. *g*, at 42. The duty applied to risks arising from Hoyt's conduct, as well as those created by a third party's conduct, whether innocent, negligent, or intentional. *Id.* Indeed, section 19 confirms that the risk rendering a defendant's conduct negligent may be the "risk that potential victims will act in ways that unreasonably imperil their own safety." *Id.* § 19 cmt. *b*, at 216.

Gutterz personnel had observed the conflict developing between Hoyt, Brittain, and Knapp, and had observed all three consuming alcohol in the bar that afternoon. Hostilities escalated such that the waitress felt compelled to seek and obtain Atkinson's permission to discontinue alcohol service to Hoyt and Brittain. Atkinson ordered Hoyt out of the bar as a result of his concern that a physical altercation between Hoyt

and Knapp might occur. Moreover, bars are business venues in which alcohol-fueled disturbances causing injury and even death are known to occur. *See Delgado v. Trax Bar & Grill,* 113 P.3d 1159, 1169 (Cal. 2005) (proprietor who serves intoxicating drinks must exercise reasonable care to protect patrons from injury at hands of fellow guests); *Carey v. New Yorker of Worcester, Inc.,* 245 N.E.2d 420, 422 (Mass. 1969) ("commotion and boisterous behavior and continued drinking" may be "warnings of trouble"); *Priewe v. Bartz,* 83 N.W.2d 116, 120 (Minn. 1957) (presence of an intoxicated person upon the premises "immediately exposes the proprietor to the hazards of liability resulting from the unpredictable conduct of such person"); *Peck v. Gerber,* 59 P.2d 675, 678 (Or. 1936) ("any place selling intoxicants for immediate consumption is potentially a disorderly place unless properly policed and patrolled"). Under these facts, and given the relevant context of a bar and the conduct known to occur there, we cannot conclude that the risk of harm to Hoyt was unforeseeable as a matter of law as contemplated by sections 3, 19, and 40. Small changes in the facts may make dramatic changes in how much risk is foreseeable, and thus we leave the breach question's foreseeability determination to juries unless no reasonable person could differ on the matter. *Thompson,* 774 N.W.2d at 836. Given the ruling of our court of appeals, the general tenor of bar behavior, and Atkinson's own testimony regarding concern about a physical altercation, we conclude that a reasonable person might find the risk of harm to Hoyt foreseeable. Accordingly, that Hoyt may have initiated the conflict cannot serve as the basis for summary judgment that Gutterz acted reasonably under the circumstances.

Although the district court did not clearly address whether the record established reasonable care by Gutterz, Hoyt contends that

Gutterz could have exercised reasonable care by any of the following: (1) calling the police when the conflict developed, (2) escorting Hoyt to his vehicle in the parking lot, or (3) verifying that Knapp was not lying in wait in the parking lot. Gutterz contends that it did escort Hoyt to his vehicle, and that its precautions here were reasonable as a matter of law. While resolution of the factual dispute is best left to the fact finder, we observe that the resolution may have significant bearing on the reasonable care determination. We emphasize that our recognition of a duty in this case does not give rise to strict or absolute liability on the part of Gutterz. Instead, to fulfill its duty in this context, Gutterz was merely required to employ reasonable safety precautions. It may be that quick intervention was all that was necessary under the circumstances. *See, e.g., Collins v. Shepherd*, 441 S.E.2d 458, 459 (Ga. Ct. App. 1994). Alternatively, a call to the police may have been warranted. *See, e.g., Getson v. Edifice Lounge, Inc.*, 453 N.E.2d 131, 135 (Ill. App. Ct. 1983); *Regan v. Denbar, Inc.*, 514 N.W.2d 751, 753 (Iowa Ct. App. 1994). Regardless, the question of what reasonable care required under these circumstances is for the jury; it is only in exceptional cases that such questions may be decided as matters of law. Iowa R. App. P. 6.904(3)(*j*). Given the factual dispute here, and our preference for the jury's assessment of reasonable care, we cannot conclude that the record established Gutterz's conduct constituted reasonable care as a matter of law.

**C. Scope of Liability**. Although the district court's ruling did not address the issue of Gutterz's scope of liability, Gutterz relies on it on appeal as an alternative ground for affirming the ruling. *See Pitts v. Farm Bureau Life Ins. Co.*, 818 N.W.2d 91, 97 (Iowa 2012) (noting we may affirm on an alternative ground raised in the district court even if it was not one on which the court based its ruling). Gutterz contends that

because the risk of Knapp assaulting Hoyt was unforeseeable as a matter of law, the harm here fell outside Gutterz's scope of liability. A finding to the contrary, Gutterz argues, would result in an overbroad and unjust scope of liability for a tavern. Hoyt does not address this particular argument directly on appeal, but contends generally that because a reasonable person could find the harm to Hoyt was foreseeable, the district court erred in resolving the issue as a matter of law.

Although we have concluded Gutterz owed Hoyt a duty of reasonable care here, we have previously noted that tort law will not always impose liability on an actor for all harm factually caused by an actor's conduct. *Thompson*, 774 N.W.2d at 837. Instead, an actor's liability is limited to those physical harms that result from the risks that make an actor's conduct tortious. *Id.* at 838; *see also Royal Indem. Co. v. Factory Mut. Ins. Co.*, 786 N.W.2d 839, 852 (Iowa 2010) (" '[A]n act which merely places persons in the position where they sustain injury from an unrelated event is not for that reason a legal cause of the injury.' " (quoting *Hansen v. Anderson, Wilmarth & Van Der Maaten*, 657 N.W.2d 711, 715 (Iowa 2003))). This limiting principle aims to avoid unjustified liability and to confine liability in a way consistent with the reasons for holding an actor liable in the first place. Application of the principle is fact-intensive, requiring consideration of the risks that make an actor's conduct tortious and a determination of whether the harm at issue is a result of any of those risks. *Thompson*, 774 N.W.2d at 838. Section 29 of the Restatement (Third) further explains these considerations, noting that tortious conduct may be wrongful because of various risks to various classes of persons. Restatement (Third) § 29 cmt. *d*, at 496. Some risks may be far more prominent than others, but all are relevant in determining whether harm is within the appropriate scope of liability for the actor's conduct. *Id.*

Further, in special relationship cases, an actor's scope of liability may include harms that are different from the harms risked by the actor's failure to exercise reasonable care to ameliorate or eliminate risks that the special relationship requires the actor to attend to. Restatement (Third) § 29 cmt. *r,* at 511. In other words, as a result of the bar–patron relationship, a range of risks may arise for which the bar has a duty of reasonable care, and in addition, a separate range of risks may arise to the extent the bar's conduct foreseeably combines with or permits the improper conduct of a third party. *Id.* Thus, as noted in our reasonable care analysis, foreseeability is relevant in the scope determination, and we have observed that the fact finder, in determining the appropriate scope of liability, must determine whether the type of harm that occurs is among those reasonably foreseeable potential harms that make an actor's conduct negligent. *Thompson,* 774 N.W.2d at 839 (citing Restatement (Third) § 29 cmt. *j,* at 594). When courts consider the scope-of-liability question on summary judgment, we have explained that they

> "must initially consider all of the range of harms risked by the defendant's conduct that the jury *could* find as the basis for determining [the defendant's] conduct tortious. Then, the court can compare the plaintiff's harm with the range of harms risked by the defendant to determine whether a reasonable jury might find the former among the latter."

*Id.* at 838 (quoting Restatement (Third) § 29 cmt. *d,* at 496). No straightforward rule can be provided to determine the appropriate level of generality or specificity to employ in characterizing the harms. Restatement (Third) § 29 cmt. *i,* at 504. Where there are contending plausible characterizations of the range of reasonably foreseeable harms arising from the defendant's conduct leading to different outcomes and requiring the drawing of an arbitrary line, the case should be left to the judgment and common sense of the fact finder. *Id.*

At first blush, the relevant inquiry here given the parties' contentions might appear to be the appropriate level of generality with which to characterize the harm that occurred. According to Gutterz, the relevant range of risks did not include the risk that a verbally aggressive patron in a bar might suffer retaliatory harm from a patron who showed no signs of physical aggression inside the bar. Hoyt, on the other hand, characterizes the relevant range of risks more generally and contends the risk of a physical altercation between bar patrons who had engaged in verbal conflict on the premises is well within the range. Regardless which of these characterizations of the range of risks is adopted, however, we cannot conclude Hoyt's harm fell outside Gutterz's scope of liability as a matter of law. For the same reasons discussed above in our reasonable care analysis, we think it plausible that a reasonable jury could find *either* characterization of the risk of harm to Hoyt as falling within the range of risks arising from Gutterz's conduct. Accordingly, the claim must survive summary judgment on the scope-of-liability issue.

Finally, we think it prudent to observe that the scope-of-liability standard is flexible enough to accommodate fairness concerns raised by the specific facts of a case. *Thompson,* 774 N.W.2d at 838. Whether an individual instigating a bar fight should have a viable negligence claim when the fight materializes clearly implicates questions of fairness. Those questions, however, are better left to fact finders applying (1) the relevant breach and scope-of-liability analyses, and (2) comparative fault law, than to a court applying summary judgment rules. *See* Iowa Code § 668.3(1)(*a*) (plaintiff cannot recover damages if he or she is more than fifty percent at fault); *see also Mulhern v. Catholic Health Initiatives*, 799 N.W.2d 104, 121 (Iowa 2011); Restatement (Third) § 29 cmt. *s*, at 511.

**IV. Conclusion.**

The district court erred in concluding that Gutterz, as a matter of law, could not have breached its duty of reasonable care. In addition, a reasonable fact finder could conclude that Hoyt's harm was within the appropriate scope of liability for Gutterz. Genuine issues of material fact remain regarding each element of Hoyt's negligence claim and summary judgment was therefore inappropriate. Accordingly, we reverse the district court's dismissal of this claim and remand this case for trial.

**DECISION OF COURT OF APPEALS AFFIRMED; DISTRICT COURT JUDGMENT REVERSED AND CASE REMANDED.**

All justices concur except Waterman, J., Cady, C.J., and Mansfield, J., who dissent.

**WATERMAN, Justice (dissenting).**

I respectfully dissent. I agree with the dissenting judge on the court of appeals that summary judgment was correctly granted by the district court. Negligence cases in general and bar fights in particular are poor candidates for summary judgment. But, here, it is undisputed the bar owner kicked out the troublemaker. There was no reason to eject the well-behaved victim of the troublemaker's verbal abuse or call the police before the quiet patron unexpectedly jumped the troublemaker in the parking lot. The evidence is insufficient to raise a jury question on negligence or scope of liability. Uncontroverted facts establish the defendant acted reasonably as a matter of law.

There is no evidence or claim that prior fights or third-party criminal acts showed a need for a bouncer or other security at Gutterz. Bars are not insurers strictly liable for injuries on their premises inflicted by others. So, what happened that allows Hoyt to sue Gutterz for a beating inflicted on him by Knapp in the parking lot? Although accounts of the fight outside differ, what happened inside Gutterz is undisputed.

By all accounts, Hoyt was the aggressor inside Gutterz, while Knapp remained calm. The two people working at Gutterz Bowl & Lounge in Guthrie Center, owner Rod Atkinson and waitress Sarah Greene, knew nothing about any bad blood between these men. Hoyt had been fishing with defendant Knapp hundreds of times, but they had recently had a falling out. Hoyt and other members of his construction crew stopped by Gutterz after work. After drinking a few beers, Hoyt and his companion, Chris Brittain, became loud and started taunting Knapp. Hoyt approached Knapp to confront him and continue his verbal harassment. It is undisputed that Knapp did not threaten Hoyt verbally

or physically. Greene responded to the belligerence of Brittain and Hoyt by threatening to "cut them off" unless they quieted. When their taunts and name-calling continued despite her warning, she talked to Atkinson who agreed they should quit serving them beer. Atkinson, who had been busy in the kitchen, came out to check on the situation. Hoyt complained about the decision to quit serving them alcohol. When Hoyt and Brittain continued their name-calling, Atkinson told them to leave. They left. Throughout this commotion, Knapp stayed quiet. He did nothing to raise a concern about his behavior or to justify kicking him out with Hoyt.

Having kicked out the troublemakers—Hoyt and his companion—what else should Gutterz have done? How was the bar negligent? The majority concludes a jury could find Gutterz negligent for failing to call the police. But, no crime had (yet) been committed, and Hoyt exited the bar when told to leave. Knapp was not threatening anyone or misbehaving in any way. At that point, why call the police? From Gutterz's standpoint, the incident had been defused by Hoyt's departure. The majority also argues Atkinson should have done more to ensure Hoyt left the parking lot safely. This theory assumes Atkinson reasonably should have foreseen *Knapp* would attack Hoyt. Knapp had not so much as even raised his voice. The majority fails to cite a single case from any jurisdiction supporting a property owner's liability for a third-party assault under equivalent facts.

This case is quite a bit different from the Iowa precedent holding a jury question existed on a bar's negligent failure to prevent an assault. *See, e.g., Regan v. Denbar, Inc.*, 514 N.W.2d 751 (Iowa Ct. App. 1994). In that case, plaintiff, Daniel Regan, was playing darts with his brothers at Katie McButts Tavern in Davenport. *Id.* at 752. Two men confronted the

Regans, and one "struck Daniel in the face, knocking him to the ground" inside the bar. *Id.* A fight ensued, and the bartender intervened and asked the Regans to leave. *Id.* The Regans feared they would be attacked on their way to their vehicle and asked the bartender to call the police while they waited inside until the police arrived. *Id.* The bartender refused and sent the Regans out the back door where he saw one of the attackers waiting. *Id.* at 753. The next attack on the Regans outside was reasonably foreseeable. Accordingly, the court of appeals reversed a directed verdict for the bar. *Id.* In sharp contrast here, no one asked for the police to be called, and Knapp had not assaulted Hoyt or anyone inside the lounge or given any indication he would do so outside.

Our court's recent adoption of sections of the Restatement (Third) of Torts is not the death knell for summary judgments in negligence cases. *See, e.g., McCormick v. Nikkel & Assocs., Inc.*, 819 N.W.2d 368, 371–75 (Iowa 2012). In that case, we affirmed summary judgment dismissing the plaintiff's negligence claims against an electrical subcontractor. *Id.* at 369. McCormick was electrocuted on a jobsite six days after the defendant completed its work and returned control of the locked equipment to the owner. *Id.* at 370. We affirmed summary judgment on two grounds. First, we applied the long-standing rule that liability follows control, which we recognized as "an articulated countervailing principle or policy" exception to the general duty of care under section 7(a) of the Restatement (Third). *Id.* at 374. Second, we noted the absence of evidence of any defect in the electrical work and affirmed summary judgment on the alternative ground that defendant "did not create a 'risk of physical harm' giving rise to a general duty

under section 7(a) of the Third Restatement." *Id.* at 375. Nothing in today's majority opinion limits our holdings in *McCormick*.

The duty of care invoked by the majority today is found in section 40(b)(3) of the Restatement (Third). The majority relies on comment *j*, which recognizes that businesses open to the public "owe a duty of reasonable care to persons lawfully on their land who become ill or endangered by risks created by third parties." Restatement (Third) of Torts: Liability for Physical and Emotional Harm § 40 cmt. *j*, at 43–44 (2012) [hereinafter Restatement (Third)]. The duty owed is one of *reasonable* care. To raise a jury question, there must be sufficient evidence that a jury could find defendant's conduct breached this duty, that is, the defendant acted negligently or unreasonably. Such evidence is lacking here. The drafters of the Restatement (Third) confirm that, when "reasonable minds can reach only one conclusion," the court may enter a directed verdict or judgment as a matter of law that defendant is "free of negligence." *Id.* § 8 cmt. *b*, at 103–04 (2010).

The drafters also admonished that "the prospect of criminal conduct is significantly lower than the prospect of negligent conduct." *Id.* § 19 cmt. *f*, at 220. Our own precedent applying the Restatement (Third) makes clear the question is whether Gutterz should have foreseen that Knapp would assault Hoyt. In *Brokaw v. Winfield-Mt. Union Community School District*, a student, McSorley, assaulted Brokaw, an opposing player during a basketball game. 788 N.W.2d 386, 388 (Iowa 2010). Brokaw and his parents sued McSorley for battery and his school district for negligent failure to prevent his attack. *Brokaw*, 788 N.W.2d at 388. We clarified that liability under the Restatement (Third) turned on whether the district knew, or "in the exercise of ordinary care should have known, that McSorley was likely to commit a battery against an

opposing player." *Id.* at 393–94. We upheld the district court's bench trial judgment in favor of the district because substantial evidence supported the court's finding the assault was not foreseeable. *Id.* at 394–95. In so holding, we concluded the correct legal standard required a determination of whether it was foreseeable *McSorley* would assault Brokaw. *Id.* at 393–94. Similarly, here, the issue is not whether a fight between Hoyt and Knapp was foreseeable, but rather whether it was reasonably foreseeable to Gutterz that Knapp would assault Hoyt. Gutterz acted reasonably as a matter of law by ejecting Hoyt, the troublemaker. Gutterz had no reason to foresee that Knapp, the quiet one, would attack Hoyt outside the lounge.

I agree with the dissenting judge on the court of appeals, who concluded the "evidence does not make it foreseeable Knapp, who was causing no trouble, would harm Hoyt." Similarly, the district court correctly concluded:

> The circumstances may have made it foreseeable that Hoyt might harm Knapp. The circumstances known to Atkinson did not make it foreseeable that Knapp might harm Hoyt.
>
> In the case at bar there was no evidence of a potential danger to Hoyt from Knapp. Because of that total lack of evidence, a fact question of whether Gutterz exercised reasonable care to discover the existence of a danger is not generated. Just as in *Knebel v. Ka-Boos Bar & Grill*, 2004 Iowa App. LEXIS 335, in the instant case "the owners did not know and had no reason to know that the assault was about to occur." Accordingly, summary judgment is appropriate.

Under analogous circumstances, other appellate courts have affirmed directed verdicts or summary judgments when the assault that occurred was not reasonably foreseeable. *See, e.g., Boone v. Martinez*, 567 N.W.2d 508, 511 (Minn. 1997) (affirming directed verdict because "the evidence established that the assault by Martinez was sudden and unforeseeable"); *Rader v. Sugarland Enters., Inc.*, 149 P.3d 702, 707

(Wyo. 2006) (affirming summary judgment when assailant in parking lot fight was passive bystander in precipitating incident inside before troublemakers were told to leave). *See generally* Joan Teshima, Annotation, *Tavernkeeper's Liability to Patron for Third Person's Assault,* 43 A.L.R. 4th 281, 354–63 (1986) (collecting bar fight cases adjudicated by court as a matter of law).

Summary judgment is also appropriate in this case on the scope of liability. "Under the Restatement (Third) analysis, . . . something [defendant] did or did not do must have increased the risk" to plaintiff. *Royal Indem. Co. v. Factory Mut. Ins. Co.,* 786 N.W.2d 839, 851, 851–52 (Iowa 2010) (vacating plaintiff's jury verdict on grounds the harm was outside the scope of liability as a matter of law). Again, there is no evidence that *Gutterz* did or failed to do anything that *increased* the risk Knapp would harm Hoyt. To the contrary, Gutterz reduced the risk those men would come to blows by ejecting Hoyt, who was harassing Knapp.

In *Brokaw*, we admonished that:

> Where liability is premised on the negligent or intentional acts of a third party . . . ,"the law itself must take care to avoid requiring excessive precautions of actors relating to harms that are immediately due to the improper conduct of third parties, even when that improper conduct can be regarded as somewhat foreseeable."

788 N.W.2d at 392 (quoting Restatement (Third) § 19 cmts. *g, h,* at 220–21). The majority disregards that admonishment today. It is an "excessive precaution" to require Atkinson to call the police after he ejected Hoyt or to guard Hoyt outside until he left unharmed when there were only two employees working at Gutterz that afternoon, and Knapp had given no sign of trouble.

For these reasons, I would affirm the district court's summary judgment in favor of Gutterz.

Cady, C.J., and Mansfield, J., join this dissent.