# IN THE COURT OF APPEALS OF IOWA

No. 19-0767
Filed September 2, 2020

ROXANNE RIEDER and TONY RIEDER,
        Plaintiffs-Appellants,

vs.

DAVID SEGAL, M.D., THEODORE DONTA, M.D., PH.D, EASTERN IOWA BRAIN AND SPINE SURGERY, PLLC, RADIOLOGY CONSULTANTS OF IOWA, PLC and MERCY HOSPITAL, CEDAR RAPIDS, IOWA, d/b/a MERCY MEDICAL CENTER, CEDAR RAPIDS, IOWA,
        Defendants-Appellees.
_____

        Appeal from the Iowa District Court for Linn County, Ian K. Thornhill, Judge.


        Roxanne and Tony Rieder appeal the district court's order granting summary judgment in favor of Mercy Medical Center. **REVERSED AND REMANDED.**


        Bruce L. Braley, Brian N. Aleinikoff, and Timothy J. Luetkemeyer of Leventhal Puga Braley P.C., Denver, Colorado, for appellants.

        Christine L. Conover, Carrie L. Thompson, and Dawn M. Gibson of Simmons Perrine Moyer Bergman PLC, Cedar Rapids, for appellees.


        Considered by Vaitheswaran, P.J., and Mullins and Ahlers, JJ.

**VAITHESWARAN, Presiding Judge.**

This is an appeal from summary judgment rulings in favor of a medical center on a negligent credentialing claim raised by a former patient.

The following facts are essentially undisputed. Roxanne Rieder underwent surgery at the hands of Dr. David Segal of Eastern Iowa Spine and Surgery Center, an affiliate of Mercy Medical Center (Mercy) in Cedar Rapids, Iowa. On the date of her discharge from the hospital, the Iowa Board of Medicine (IBM) filed a "statement of charges" against Dr. Segal, alleging in part that he "demonstrated professional incompetency . . . when he failed to provide appropriate neurosurgical care to several patients in Cedar Rapids, Iowa." Rieder conceded she was not one of the patients implicated in the charges.

Rieder experienced complications from the surgery. She and her husband Tony sued Mercy, alleging the medical center (1) "was negligent in credentialing Dr. Segal as a member of its staff in that it failed to exercise reasonable care in investigating and selecting medical staff to permit only competent and qualified physicians the privilege of using its facilities"; (2) Mercy "knew, or should have known, that Dr. Segal did not possess the proper professional competency to practice"; and (3) Mercy's negligent credentialing of Dr. Segal caused Roxanne injuries and damages.[1] They also raised a loss-of-consortium claim.

Mercy filed a motion for partial summary judgment "as to the narrow issue of whether a hospital has a duty to immediately limit, restrict, or suspend privileges of a credentialed physician merely upon the notification of an inquiry and/or

---

[1] The Rieders voluntarily dismissed the remaining defendants.

investigation by" IBM. Specifically, Mercy asserted, "[N]o such duty exists as a matter of law due to the confidentiality provisions surrounding IBM investigations." The district court granted the partial motion.

Mercy then filed a second motion for summary judgment on the ground that there was "[n]o factual basis" to support the Rieders' claim of negligent credentialing. Following a hearing, the district court granted the second motion and entered judgment in favor of Mercy.

On appeal, the Rieders argue (1) "the peer review privilege is unreasonable when applied in negligent credentialing cases" and (2) the district court "fail[ed] to view the evidence in the light most favorable to the [Rieders]," "abused its discretion by weighing the evidence," and "abused its discretion in excluding highly relevant evidence." Mercy preliminarily responds that error was not preserved on the peer-review-privilege argument. *See* Iowa Code § 147.135(2) (2016) ("Peer review records are privileged and confidential, are not subject to discovery, subpoena, or other means of legal compulsion for release to a person other than an affected licensee or a peer review committee, and are not admissible in evidence in a judicial or administrative proceeding other than a proceeding involving licensee discipline or a proceeding brought by a licensee who is the subject of a peer review record and whose competence is at issue."). The Rieders counter that if the statutory peer review privilege could "hamstring" them from proving their negligent credentialing case, there was all the more reason to grant them "wide latitude" to prove their case by other means. *See id.* ("This subsection shall not preclude the discovery of the identification of witnesses or documents known to a peer review committee."); *cf. Day v. Finley Hosp.*, 769 N.W.2d 898,

902 (Iowa Ct. App. 2009) ("Day also argues that it would be impractical and absurd to have negligent credentialing claims without allowing plaintiffs access to credentialing files. This, however, puts the cart before the horse. The legislature has spoken and has directed that peer review files be kept confidential, even when requested in litigation. The legislature has never approved negligent credentialing claims. It makes no sense to argue that express statutory language should yield to the needs of a cause of action that the legislature has never recognized."). We need not wade into the effect of the statutory peer review privilege on the Rieders' negligent credentialing claim because we find a portion of the Rieders' second argument dispositive.

In considering that argument, we begin with the well-established summary judgment standard. Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *See* Iowa R. Civ. P. 1.981(3). "In ruling on a motion for summary judgment, the court does not weigh the evidence." *Linn v. State*, 929 N.W.2d 717, 730 (Iowa 2019). "Instead, the court inquires whether a reasonable jury, faced with the evidence presented, could return a verdict for the nonmoving party." *Id.* "When two legitimate, conflicting inferences are present at the time of ruling upon the summary judgment motion, the court should rule in favor of the nonmoving party." *Eggiman v. Self-Insured Servs. Co.*, 718 N.W.2d 754, 763 (Iowa 2006).

In its second summary judgment ruling, the court concluded, "[T]aking the admissible evidence in the light most favorable to Plaintiffs and giving them the benefit of all reasonable inferences therefrom, the Court finds there is no basis upon which a reasonable jury could conclude that [Mercy] was negligent as alleged in the Petition." In reaching that conclusion, the court applied a rule 5.403 balancing test, which requires a court to balance the probative value of evidence against its prejudicial effect. *See* Iowa R. Evid. 5.403 ("The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice . . . ."). The Rieders contend the court's application of the evidentiary rule amounted to an impermissible weighing of the evidence. We agree. Because the court was not allowed to weigh the evidence on summary judgment, we reverse the court's second summary judgment ruling.

Our opinion could end here, but because we are remanding for further proceedings, we feel compelled to address the district court's conclusion in its first summary judgment ruling that Mercy owed no duty to the Rieders.

The Iowa Supreme Court has not formally recognized the tort of negligent credentialing. *See Hall v. Jennie Edmundson Mem'l Hosp.*, 812 N.W.2d 681, 685 (Iowa 2012). The court assumed "without deciding that the tort is actionable in this state." *Id.*

The district court followed suit, citing Mercy's position of "assum[ing], but not conced[ing] that negligent credentialing [was] a viable claim in Iowa." The court proceeded to the question of whether Mercy owed a duty "to take immediate action with regard to a doctor's privileges upon finding out there is an open investigation by the Board of Medicine." *See Thompson v. Kaczinski*, 774 N.W.2d 829, 834

(Iowa 2009) ("An actionable claim of negligence requires 'the existence of a duty to conform to a standard of conduct to protect others, a failure to conform to that standard, proximate cause, and damages.'" (citation omitted)). The court noted the issue was a question of law for the court. *See Hoyt v. Gutterz Bowl & Lounge L.L.C.*, 829 N.W.2d 772, 775 (Iowa 2013). The court next cited *Hoyt*'s reaffirmation of a duty analysis that removed foreseeability from the equation and underscored the importance of "an articulated countervailing principle or policy" in "denying or limiting liability in a particular class of cases." *Id.* (quoting *Thompson*, 774 N.W.2d at 835; *see also id.* ("We joined the drafters of the Restatement (Third) in explicitly disapproving of the use of foreseeability, or lack thereof, in making no-duty determinations."). The court concluded, "Mercy . . . , without knowing the basis of the investigation, could not have had a duty to 'restrict or terminate Dr. David Segal's surgical privileges'" before IBM filed public charges against the physician. The court reasoned Mercy "*could not have known nor should it have known that he posed a serious risk to his patients*" at that juncture. (Emphasis added.) The court further reasoned, "To find that such a duty does attach as soon as an investigation commences would be to nullify the purpose of the investigation and the due process it protects."

The Rieders take issue with the court's determination that Mercy "could not have known nor should it have known that he posed a serious risk to his patients." They argue, "The trial court's conclusion that it would be speculation to suggest Mercy had knowledge of the IBM investigation prior to the filing of formal charges improperly views the evidence in the light most favorable to Mercy." In their view,

"This is exactly the type of situation where a jury could infer other connected facts which reasonably follow."

Mercy concedes "the Rieders preserved error as to the district court's grant of partial summary judgment." The hospital argues that "[t]he **undisputed** factual circumstance in this case was Dr. Segal's mere notification to Mercy of inquiries by the IBM."

There is indeed no dispute that Dr. Segal simply notified Mercy of the fact of an investigation by IBM and not the results. But the Rieders do not attack this undisputed fact. As noted, they assail the court's determination as a matter of law that the hospital could not nor should not have known of the risks posed by Dr. Segal when it was notified of the IBM investigation.

That determination implicates the concept of foreseeability. *See Lawrence v. Grinde*, 534 N.W.2d 414, 419 (Iowa 1995) ("Foreseeability means that which it is objectively reasonable to expect, not merely what might conceivably occur." (quoting *Greives v. Greenwood*, 550 N.E.2d 334, 338 (Ind. Ct. App. 1990)). As discussed, foreseeability is no longer a component of the duty analysis. *See Mitchell v. Cedar Rapids Cmty. Sch. Dist.*, 832 N.W.2d 689, 702 (Iowa 2013) (reiterating "we have adopted the duty principles of the Restatement (Third) and will not consider foreseeability, or lack thereof, in making duty determinations" (citing *Hoyt*, 829 N.W.2d at 776–77; *Thompson*, 774 N.W.2d at 835)). Whether Mercy could or should have known Dr. Segal posed a risk to his patients at the time Dr. Segal notified it of the IBM investigation is precisely the type of question the supreme court relegated to the fact finder. *See Hoyt*, 829 N.W.2d. at 776 ("[F]oreseeability is central to the fact finder's inquiries regarding breach and the

range of harms for which an actor may be liable."). As the Rieders assert, the question "[w]hat did Mercy know about Dr. Segal's incompetence" was a "question of fact," not an issue of law.

We recognize the district court also considered a policy reason for finding no duty. But *Thompson* authorizes the incorporation of policy considerations in the duty analysis only after foreseeability is removed from the equation. 774 N.W.2d at 835. Because the district court considered foreseeability in determining that Mercy did not owe the Rieders a duty, we also reverse the district court's first, partial summary judgment ruling.

**REVERSED AND REMANDED.**