# IN THE COURT OF APPEALS OF IOWA

No. 23-0596
Filed April 10, 2024

**CHAD RUBY,**
        Plaintiff-Appellant,

**vs.**

**JUSTINA SHEEHAN,**
        Defendant-Appellee.
_____

        Appeal from the Iowa District Court for Webster County, Angela L. Doyle, Judge.

        A plaintiff appeals the district court's grant of summary judgment dismissing his premises-liability and negligence-per-se claims and its denial of his cross-motion for partial summary judgment on his negligence-per-se claim. **AFFIRMED.**

        Gary Dickey and Matthew Sahag of Dickey, Campbell, & Sahag Law Firm, PLC, Des Moines, for appellant.

        Jon A. Vasey of Spencer Vasey Dirth, Des Moines, for appellee.

        Considered by Bower, C.J., and Buller and Langholz, JJ.

**LANGHOLZ, Judge.**

While attending a New Year's Eve party at Justina Sheehan's rented home, Chad Ruby was stabbed eleven times by another guest using a kitchen knife she found there. Ruby sued the stabber—Alyssa Slusser—and a jury awarded him $20 million in damages. But he also seeks to hold Sheehan—the party host and possessor of the premises—liable for negligently failing to control Slusser to prevent the stabbing. And Ruby asserts a negligence-per-se claim against Sheehan for allegedly violating a city ordinance prohibiting residents from permitting "fighting" in their homes "in such manner as to disturb the neighborhood." The district court agreed with Sheehan that Ruby's negligence claims fail as a matter of law, granted her summary judgment, and denied Ruby's cross-motion for partial summary judgment that Sheehan was negligent per se. Ruby now appeals.

We agree that Ruby's claims both fail. On the premises-liability claim, we reach that result on a different ground than the district court: Sheehan—as a possessor of a private residence and social host—had no duty to prevent another guest from stabbing Ruby during the party. And Ruby's negligence-per-se claim fails because the city ordinance is not specific enough to establish a negligence-per-se standard. We thus affirm the district court's grant of summary judgment to Sheehan and its denial of Ruby's cross-motion.

I.      **Background Facts and Proceedings**

Justina Sheehan and her sister hosted a party on December 31, 2017, to celebrate the new year and remember Sheehan's recently deceased fiancé. A dozen people attended. Among them were Ruby and Slusser, who engaged in

"friendly" and "flirting conversation" with each other while "hanging out with everybody" early on. Ruby testified that he knew nothing about Slusser and agreed that he had no reason to believe Slusser was violent or would harm him.

The party was held at Sheehan's house, which she rented. She provided alcohol that many—including Ruby, Slusser, and Sheehan herself—imbibed in high quantities as the night wore on. Some guests also brought their own alcohol. Precise accounts of the night differ between the intoxicated partiers. But according to Ruby's testimony, "everybody was having a good time," and "the whole party was fun" with "no issues" for most of the night. Eventually, Ruby and some of his friends engaged in "grappling" and "play fighting," as they apparently often did when hanging out and drinking.

Then, at some point after midnight, things escalated. Another guest "sucker-punched" Ruby in the kitchen, and a more serious fight ensued. While Sheehan and other guests were in the front yard getting the guest who punched Ruby to leave, Slusser stabbed Ruby eleven times with a knife from a set on the kitchen counter.

Sheehan and others returned to find Ruby bloodied in the dining room. Police—who had been called by a neighbor—were right behind. The party disbanded. And paramedics took Ruby for emergency medical treatment.

As a result of her conduct stabbing Ruby, Slusser pleaded guilty to assault with a violent weapon in violation of Iowa Code sections 708.1(2)(c) and 708.2(3) (2017) in August 2018.

About a year later, Ruby brought this lawsuit seeking damages for his stabbing. He claimed assault and battery against Slusser. And he eventually

asserted what he titled "premises liability" negligence claims against Sheehan and the owner of her rented home.[1]  In his second amended petition, Ruby asserted only two specifications of negligence against Sheehan:

- "Sheehan [was] negligent in failing to protect Ruby from being harmed on [her] premises," and

- "Sheehan [was] negligent per se in permitting fighting on the property on or about January 1, 2018."

He also asserted a corresponding duty for each specification—that Sheehan had "a duty to exercise reasonable care so to control the conduct of those on the Premises as to prevent them from harming others" and "a duty not to permit fighting on the property."  While it was not identified in the petition, Ruby later confirmed that he based his negligence-per-se claim on a Fort Dodge city ordinance that makes it "unlawful for any person, within the city limits to permit . . . any . . . fighting . . . in any house, or upon any premises . . . occupied, possessed or controlled by him, in such manner as to disturb the neighborhood or persons passing along the street."  Fort Dodge Mun. Code § 9.04.30.

In October 2020, Sheehan moved for summary judgment seeking to dismiss the claims against her.  In her briefing, she argued that "she did not have a duty to protect [Ruby] from Defendant Slusser or otherwise control Defendant Slusser's conduct and therefore, she is not liable as a matter of law."  Alternatively, she argued that even if she owed a duty, "there is not sufficient evidence to create a

---

[1] For a time, the case also included counterclaims by Slusser against Ruby for assault and battery and intentional infliction of emotional distress.  These claims were dismissed by the court as barred by the statute of limitations and are not at issue in this appeal.

jury question on whether she breached that duty, because the stabbing of [Ruby] by Defendant Slusser was not foreseeable." Finally, Sheehan argued that the negligence-per-se claim failed because the city ordinance "lacks the requisite specificity to establish a standard of care."

Ruby resisted Sheehan's motion and filed his own partial summary judgment motion on the negligence-per-se claim. He contended that because there was no dispute that "Sheehan permitted Slusser to stab Ruby on her premises," the court could rule as a matter of law that Sheehan was negligent per se based on the ordinance, leaving only damages as a fact dispute for trial.

In a January 2021 order, the district court granted Sheehan summary judgment, denied Ruby's cross-motion for partial summary judgment, and dismissed all of Ruby's claims against Sheehan. The court did not decide whether Sheehan owed Ruby a duty—and instead assumed that she did—because it considered "the issue of breach to be [the] crux of the matter." And while acknowledging that "[q]uestions of knowledge or reasonableness are generally left for juries to decide," the court held Ruby had failed to come forward with any evidence creating a material fact dispute that "Sheehan had knowledge of the immediate circumstances or the general character of Slusser to foresee Slusser stabbing Ruby." And so, the court concluded that Sheehan's conduct was not negligent as a matter of law.

The court also held that Ruby's negligence-per-se claim failed for three reasons. First, the court held that the ordinance Ruby relied on lacked sufficient specificity because it only applied to fighting that "disturb[s] the neighborhood or persons passing along the street." Second, the court reasoned that because the

ordinance "is aimed at preserving peace for the public," it is not intended to protect "[t]he harm claimed by Ruby, getting stabbed at a house party." And finally, the court concluded that "Ruby is not within the class of persons the ordinance is intended to protect" because it "expressly applies to the neighborhood or persons passing along the street" and "Ruby is neither."

Ruby then voluntarily dismissed his claims against the owner of Sheehan's home. And the case proceeded to trial only on Ruby's claim against Slusser. The jury found Slusser liable for battery and awarded Ruby $20 million in compensatory and punitive damages. Now that the case has reached final judgment,[2] Ruby appeals the district court's summary judgment rulings dismissing his claims against Sheehan and denying his cross-motion for partial summary judgment on his negligence-per-se claim.

## II.     Ruby's Premises Liability Claim

We review the district court's rulings on the cross-motions for summary judgment for correction of errors at law. *Morris v. Legends Fieldhouse Bar & Grill, LLC*, 958 N.W.2d 817, 821 (Iowa 2021). Summary judgment is appropriate when "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Id.* (cleaned up); *see also* Iowa R. Civ. P. 1.981(3).

To succeed on his premises liability negligence claim, Ruby must prove: (1) "a duty to conform to a standard of conduct to protect others"; (2) "a failure to conform to that standard"; (3) "factual cause and scope of liability"; and

---

[2] Ruby originally filed a notice of appeal within thirty days of the district court's summary judgment order. But the supreme court found that the order was interlocutory, treated his notice of appeal as an application for interlocutory appeal, and denied it. *See Ruby v. Sheehan*, No. 21-0142 (May 5, 2021).

(4) "damages." *Thompson v. Kaczinski*, 774 N.W.2d 829, 834, 837 (Iowa 2009); *see also Hill v. Damm*, 804 N.W.2d 95, 99 (Iowa Ct. App. 2011). The first element—"whether a duty is owed under particular circumstances"—"is a matter of law for the court's determination." *Morris*, 958 N.W.2d at 821. But the remaining elements "are factual questions," generally entrusted to the factfinder for decision. *Hill*, 804 N.W.2d at 99; *see also* Iowa R. App. P. 6.904(3)(j) (requiring no citation to the "well established" proposition that "[g]enerally questions of negligence . . . are for the jury" and only to "be decided as matters of law" "in exceptional cases").

In her summary judgment motion, Sheehan argued that she had no duty to control her guests to prevent Ruby's stabbing and that, even if such a duty existed, Ruby had presented no evidence that she failed to conform to the duty. The district court declined to decide whether Sheehan had a duty but agreed with Sheehan that even assuming a duty existed, she was "entitled to summary judgment because there is no evidence she breached a duty to Ruby." On appeal, Sheehan again makes both arguments as grounds for affirming.

Ruby contends that we cannot consider Sheehan's no-duty argument because the district court did not decide that issue. But Sheehan was the successful party—the district court granted her summary judgment motion on another ground. And so, she can defend that judgment on appeal based on her no-duty argument—even though the district court did not reach it—because she raised it in her summary judgment motion. *See Iowa Tel. Ass'n v. City of Hawarden*, 589 N.W.2d 245, 252 (Iowa 1999) (considering alternative ground for summary judgment that the prevailing party urged before—but was not decided by—the district court). She "was not required to cross-appeal or to request the

district court to rule on the issue after the district court dismissed the case on other grounds." *Jasper v. H. Nizam, Inc.*, 764 N.W.2d 751, 774 (Iowa 2009).[3]

It makes particular sense for us to consider whether Sheehan owed a duty here because that is a legal question for the court to decide. *See Morris*, 958 N.W.2d at 821. Such a question is thus properly resolved by summary judgment. And doing so here avoids the need to confront whether this is the rare negligence case in which the evidence is so lacking that the factual question of the reasonableness of Sheehan's conduct can be decided as a matter of law. What's more, both parties have thoroughly briefed the duty question for us.[4] We thus turn to consider whether Ruby's claim is based on any legal duty owed by Sheehan.

---

[3] Ruby points to a recent case in which the supreme court "decline[d] to consider" an appellee's argument on the constitutionality of statute because "[t]he district court never ruled on the" question. *Nahas v. Polk County*, 991 N.W.2d 770, 784 (Iowa 2023). But the supreme court did not hold that appellate courts can no longer affirm a judgment "based on grounds urged in the district court but not considered by that court." *Moyer v. City of Des Moines*, 505 N.W.2d 191, 193 (Iowa 1993). Nor do we think that the court would silently overrule that well-established rule without any reasoning. *See DeVoss v. State*, 648 N.W.2d 56, 61–63 (Iowa 2002) (collecting cases and clarifying that error-preservation requirement of *urging* issue in the district court applied equally to appellees except for evidentiary rulings). Of course, an appellate court need not consider such alternative arguments for affirming. And it makes sense that the supreme court would decline to do so on a constitutional issue that would not have changed the result—given that the court also held that the challenged part of the statute did not apply retroactively to the case. *See Nahas*, 991 N.W.2d at 779; Appellee's Final Br., 2022 WL 17509392, at *74–76; *cf. Moyer*, 505 N.W.2d at 193 (declining invitation to affirm on alternate grounds not decided by district court because the issue was moot).

[4] Sheehan gained "additional ammunition for" her no-duty argument, *JBS Swift & Co. v. Ochoa*, 888 N.W.2d 887, 893 (Iowa 2016), because in the two years between the district court ruling and her appellate briefing, we and the supreme court decided two cases clarifying Iowa law on the duty to protect from third-party harm after the adoption of the Third Restatement. *See Kindig v. Newman*, 966 N.W.2d 310, 323–26 (Iowa Ct. App. 2021); *Morris*, 958 N.W.2d at 828.

Iowa follows the Third Restatement of Torts in analyzing whether a duty exists to support a negligence claim. *See Thompson*, 774 N.W.2d at 835; *Hoyt v. Gutterz Bowl & Lounge L.L.C.*, 829 N.W.2d 772, 776–77 (Iowa 2013). "An actor ordinarily has a duty to exercise reasonable care when the actor's conduct creates a risk of physical harm." *Thompson*, 774 N.W.2d at 834 (quoting Restatement (Third) of Torts: Liability for Physical and Emotional Harm § 7(a) (Am. L. Inst. 2010) [hereinafter Restatement (Third)]). This ordinary duty is imposed only when the actor engages in conduct. In other words, it does not impose an affirmative duty to act. *See Kindig*, 966 N.W.2d at 324 ("[A]n actor whose conduct has not created a risk of physical harm to another has no duty of care to the other unless a court determines that one of the affirmative duties is applicable." (cleaned up) (quoting Restatement (Third) § 37)).

Instead, the Third Restatement recognizes affirmative duties only in limited circumstances, generally based on a special relationship or other policy principles. *See id.*; *see also* Restatement (Third) §§ 38–44. For example, "a business or other possessor of land that holds its premises open to the public" owes "those who are lawfully on the premises" an affirmative "duty of reasonable care with regard to the risks that arise within the scope of the relationship." Restatement (Third) § 40(a), (b)(3). Thus, a tavern owes a duty of reasonable care to protect its patrons—even from harm caused by a third party. *See Hoyt*, 829 N.W.2d at 776–77. But again, outside such a specific affirmative duty to act, "there is no duty of care when another is at risk for reasons other than the conduct of the actor, even though the actor may be in a position to help." Restatement (Third) § 37 cmt. b; *see also Hoyt*, 829 N.W.2d at 776 n.4.

Whether considering the ordinary duty or an affirmative duty, courts may decide that no duty exists in a class of cases "if either the relationship between the parties or public considerations warrants such a conclusion." *Morris*, 958 N.W.2d at 822 (cleaned up); *see also* Restatement (Third) § 7(b) ("In exceptional cases, when an articulated countervailing principle or policy warrants denying or limiting liability in a particular class of cases, a court may decide that the defendant has no duty or that the ordinary duty of reasonable care requires modification."); *id.* § 37 cmt. g (explaining no-duty decisions "are equally applicable to the affirmative duties provided in this Chapter as they are the ordinary duty"). We no longer consider foreseeability in our duty analysis. *See Thompson*, 774 N.W.2d at 834–35. Nor do we consider the actor's potentially negligent conduct—"[i]n the absence of a duty, the actor cannot be held liable." Restatement (Third) § 37 cmt. b.

Aside from his negligence-per-se claim, which we will analyze separately below, Ruby asserts only one specification of negligence against Sheehan in his petition—that she was "negligent in failing to protect Ruby from being harmed on [her] premises." And he alleged this breach was based on Sheehan's "duty to exercise reasonable care so to control the conduct of those on the premises as to prevent them from harming others." On appeal, Ruby continues to frame his duty argument in the same way, contending that there are "numerous examples of situations in which Iowa courts have imposed on defendants a duty of reasonable care to prevent wrongful acts of third parties." And he contends that no "principle or strong policy consideration justifies exempting Sheehan" from such a duty.

But Ruby's negligence claim relies on an affirmative duty. He seeks to hold Sheehan liable for "failing to protect Ruby from being harmed" (stabbed) and failing

"to control the conduct" of third parties (Slusser). So before we even get to considering whether the case should fall into a no-duty carve-out based on public policy considerations, we must decide whether one of the limited affirmative duties recognized by the Restatement or Iowa precedent applies here. In other words, we must ask: Does Iowa law impose an affirmative duty on Sheehan to protect Ruby from a stabbing by another guest at Sheehan's home? Because if our law does not, Sheehan owes no duty to act. *See Hoyt*, 829 N.W.2d at 776 n.4; *Kindig*, 966 N.W.2d at 324; Restatement (Third) § 37 cmt. b. We conclude that the answer is no. A social host and possessor of a private residence does not owe an affirmative duty to protect a guest from harm caused by another guest on the premises.

We start with the Third Restatement. Ruby does not direct us to any affirmative duty in the Third Restatement that might apply. And we do not see one he overlooked. *See* Restatement (Third) §§ 38–44; *see also Kindig*, 966 N.W.2d at 325 (analyzing the Third Restatement and holding that sober driver of a party bus did not have an affirmative duty to protect the other intoxicated riders on the bus from harm caused by fellow partyers).

Still, Ruby contends that there are "numerous examples" where "Iowa courts have imposed on defendants a duty of reasonable care to prevent wrongful acts of third parties." But the cases he cites for this proposition cannot bear the weight Ruby places on them. In two cases, the court did not decide whether the defendant owed a duty. *See Mitchell v. Cedar Rapids Cmty. Sch. Dist.*, 832 N.W.2d 689, 694–98 (Iowa 2013) (holding no-duty argument was not preserved for consideration on appeal from jury verdict against school district); *Hill*, 804

N.W.2d at 99 (considering "scope of liability" and "definition of negligence" on plaintiffs' appeal from directed verdict motion).[5]

In the third case, our supreme court followed the Third Restatement to recognize an affirmative duty on a tavern to protect its patrons from harm caused by a third party because it was "a business or other possessor of land that holds its premises open to the public." Restatement (Third) § 40(b)(3); *see Hoyt*, 829 N.W.2d at 776–77. But that affirmative duty applies only to premises held "open to the public" by the possessor. Restatement (Third) § 40(b)(3); *see also Kindig*, 966 N.W.2d at 324–25 (analyzing section 40(b)(3) and holding that a tavern did not hold its bus open to public when it lent it to a friend for a party as a favor and may have once provided it for another party eighteen months earlier). Ruby has presented no evidence suggesting that Sheehan held her home open to the public—a private New Year's Eve party attended by twelve people does not suffice. So the affirmative duty recognized by section 40(b)(3) does not apply here either.

In his reply brief, Ruby also points to *Morgan v. Perlowski*, 508 N.W.2d 724 (Iowa 1993)—a case decided under the *Second* Restatement—as another source for Sheehan's duty to protect him. But we are bound to follow more recent precedent applying the duty principles of the Third Restatement. *See Hoyt*, 829 N.W.2d at 776–77 ("[W]e emphasize again our adoption of the duty analysis of the Restatement (Third)."); *Thompson*, 774 N.W.2d at 835. And that precedent

---

[5] In *Hill*, we briefly discussed the special affirmative duty that Iowa law imposes on common carriers and the even higher duty imposed on school districts and their bus drivers to protect children in their care. *See* 804 N.W.2d at 104; *see also* Restatement (Third) § 40(a), (b)(1) (imposing affirmative duty on "a common carrier" to "its passengers"); *id.* § 40(a), (b)(5) (doing the same for "a school with its students"). Sheehan is neither a common carrier nor a school district.

conflicts with *Morgan* in two ways that make it impossible to also follow *Morgan*'s duty analysis to impose a duty to protect on Sheehan as Ruby urges.

First, in *Morgan* the supreme court recognized an affirmative duty—based on section 318 of the *Second* Restatement—on "a possessor of land, who is present on the land, to control the conduct of social guests" based on the foreseeability of the need to exercise control to prevent the harm. *Morgan*, 508 N.W.2d at 728; *see also* Restatement (Second) of Torts § 318 (1965) ("If the actor permits a third person to use land . . . in his possession . . . he is, if present, under a duty to exercise reasonable care so to control the conduct of the third person as to prevent him from intentionally harming others . . . if the actor (a) knows or has reason to know that he has the ability to control the third person, and (b) knows or should know of the necessity and opportunity for exercising such control."). Foreseeability was the guiding principle of that "narrow[]" affirmative duty. *Brenneman v. Stuelke*, 654 N.W.2d 507, 509 (Iowa 2002). But foreseeability has now been "excised from the duty analysis" in Iowa. *Morris*, 958 N.W.2d at 822. The supreme court has made abundantly clear that courts must not consider foreseeability of harm in deciding the question of duty. And we will not do so here.

Second, the affirmative duty to control guests recognized in *Morgan* has vanished in the Third Restatement. Ruby notes that "section 318 of the Second Restatement has been replaced by section 51 of the Restatement (Third) of Torts." (Cleaned up); *see also* Restatement (Third) § 41 cmt. a. And true, our supreme court has adopted the new duty analysis of section 51 of the Third Restatement. *See Ludman v. Davenport Assumption High Sch.*, 895 N.W.2d 902, 910 (Iowa 2017). But Ruby ignores that section 51 no longer imposes the duty to control third

parties relied on in *Morgan*. *See* Restatement (Third) § 51. The Third Restatement instead imposes a unitary duty of "reasonable care to entrants on the land" for the land possessor's own "conduct" and "artificial" or "natural conditions on the land that pose risks to entrants." *Id.* § 51(a)–(c). And it does not impose any unique affirmative duties—like the former duty to control other social guests. Rather, a land possessor only owes a duty for those "other risks . . . when any of the affirmative duties provided in Chapter 7"—the general sections on limited affirmative duties based on a special relationship or other policy principles—"is applicable." *Id.* § 51(d); *see also id.* § 51 cmt. r ("Whether a land possessor owes entrants on the land an affirmative duty to protect them from risks unrelated to the possessor's conduct or to conditions on the property is addressed in Chapter 7, not this Chapter."). As we have already discussed, none of those affirmative duties applies to impose an affirmative duty on a social host to protect against harm caused by other guests. *See id.* §§ 38–44. And section 51 makes clear that the social host's status as possessor of the property no longer results in some added affirmative duty.

This change in the Third Restatement reflects the reality that without the foreseeability limitation on the old affirmative duty to control guests, imposing the duty no longer makes sense. Unlike the reformulation of the tavern-owner affirmative duty—which can rely on presence on the premises to replace foreseeability, *see Morris*, 958 at 822–28—little would remain to define the affirmative duty to control guests without foreseeability. Indeed, without the foreseeability guardrail, the duty would essentially merge with and expand the affirmative duty to protect under section 40(b)(3)—making that duty apply not only

to possessors who open their premises to the public, but also to *all* land possessors whenever they are present on their premises.

So after our supreme court's elimination of foreseeability from the duty analysis and the adoption of section 51 as the new duty analysis for land possessors, the duty to "control the conduct of social guests" recognized in *Morgan* cannot support Ruby's negligence claim. *Morgan*, 508 N.W.2d at 728.

Again, we must remember that Ruby claimed only that Sheehan had an affirmative "duty to exercise reasonable care so to control the conduct of those on the premises as to prevent them from harming others" and was "negligent in failing to protect Ruby from being harmed on [her] premises." His petition does not claim that Sheehan engaged in any negligent conduct herself.[6] In fact, he disclaims any assertion of negligence for the most obvious possible conduct—providing alcohol to her guests—and highlights the absence of any such specification in his petition to avoid our statutory immunity for social hosts. *See* Iowa Code § 123.49(1); *Brenneman*, 654 N.W.2d at 509–10. Similarly, the absence of any other specifications of Sheehan's own conduct reinforces that Ruby's "premises liability" negligence claim relies on an affirmative duty for social hosts and land possessors to protect from third-party harm. And Iowa law does not recognize that duty. His claim thus fails as a matter of law.

---

[6] In his briefing, Ruby has sometimes referred to other potentially negligent acts by Sheehan—such as drinking to intoxication, inviting Slusser to the party, or leaving her kitchen knives on her kitchen counter. But he never amended his petition to expand beyond his premises liability claim based on Sheehan's alleged breach of an affirmative duty to protect. So we need not decide whether the ordinary duty of reasonable care would exist to support a claim of negligence based on similar assertions.

The district court did not err in granting Sheehan summary judgment and dismissing Ruby's claim that Sheehan negligently failed to protect him from being harmed while on her premises.

### IV.  Ruby's Negligence-Per-Se Claim

Ruby alternatively claims that Sheehan was negligent per se because her conduct hosting the New Year's Eve party violated a Fort Dodge city ordinance.[7] That ordinance provides:

> 9.04.030 Disturbances on own premises.
> It is unlawful for any person, within the city limits to permit or suffer any quarreling, fighting, profane or obscene language or conduct or any affray in any house, or upon any premises owned, occupied, possessed or controlled by him, in such manner as to disturb the neighborhood or persons passing along the street.

Fort Dodge Mun. Code § 9.04.30.  And Ruby argues that Sheehan violated it by permitting fighting in her house "in such manner as to disturb the neighborhood."

The violation of a city ordinance "provid[ing] a rule of conduct specifically designed for the safety and protection of a certain class of persons" that harms a person may be negligence per se.  *Winger v. CM Holdings, L.L.C.*, 881 N.W.2d 433, 448 (Iowa 2016) (cleaned up).  But the harm "must be of the kind which the [ordinance] was intended to prevent" and the person "must be within the class which [the ordinance] was intended to protect."  *Id.* (cleaned up).  And the ordinance "must have enough specificity to establish a standard of conduct."  *Struve v. Payvandi*, 740 N.W.2d 436, 443 (Iowa Ct. App. 2007); *see also Griglione v. Martin*, 525 N.W.2d 810, 812 (Iowa 1994) (requiring "precise" and "specific

---

[7] Sheehan does not argue that our duty analysis affects Ruby's ability to bring his negligence-per-se claim.  *See* Restatement (Third) § 14 cmt. *i.*  So we assume that our no-duty holding does not preclude the claim and consider it independently.

standards" that can "be followed unwaveringly in all instances"), *overruled on other grounds by Winger*, 881 N.W.2d at 446.

Consistent with this last specificity requirement, we have held that a statute requiring landlords to keep their furnaces "in good and safe working condition" cannot be a basis for negligence per se because it "does not contain a specific standard of conduct." *Struve*, 740 N.W.2d at 443. Likewise, a city's "workable lock" requirement is too "vague" and "uncertain[]" to serve as a negligence-per-se standard for the adequacy of a lock. *Brichacek v. Hiskey*, 401 N.W.2d 44, 47 (Iowa 1987). But an ordinance "requir[ing] forty-two-inch high guardrails on second-floor or higher balconies . . . is sufficiently specific to prescribe a standard of care the violation of which constitutes negligence per se." *Winger*, 881 N.W.2d at 448.

Like the district court, we agree with Sheehan that the ordinance here does not satisfy this specificity requirement. The ordinance's prohibition on fighting and other conduct only when engaged "in such manner as to disturb the neighborhood or persons passing along the street" provides only an uncertain and vague standard that lacks the precise and specific requirements needed to establish a negligence-per-se standard. *See Struve*, 740 N.W.2d at 443. Ruby offers no contrary argument, focusing exclusively on the district court's alternative reasoning that the ordinance was not intended to protect against stabbings. But we need not reach that question because—regardless—the ordinance is not specific enough. The district court thus correctly dismissed Ruby's negligence-per-se claim and denied his cross-motion for partial summary judgment on the claim.

**AFFIRMED.**